FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 2 3 2026

KEVIN P. WEIMER, Clerk
By_____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KENNETH JOHNSON et al., <br><br> Plaintiffs <br><br> v. <br><br> CHIEF JUDGE LEIGH MARTIN MAY, in her official capacity et al., <br><br> Defendants. | CIVIL ACTION NUMBER: 1:26-cv-1212-AT <br><br> **FIRST AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

Now comes the Plaintiffs Kenneth and Jacquelyn Johnson (hereinafter "Johnson's") pursuant to provisions under *Bivens v. Six Unknown Narcotics Agents* 403 U.S. 388 (1972) and Rule 15(a)(1) of the Federal Rules of Civil Procedure, the Johnson's submit this First Amended Complaint "as a matter of course" to correct unlawful deprivation of rights, retaliation, conspiracy to interfere with rights, conspiracy to retaliate, fraud on the court, intentional infliction of emotional distress leading to irreparable personal injury and multiple violations of the Johnson's constitutionally protected rights to due process under the Fifth, Seventh, and Fourteenth Amendments to the United States Constitution, obstruction of justice, perjury, accessary to murder after the fact, conspiracy, and conspiracy to interfere with the judicial process in the United States District Court for the

1

Northern District of Georgia in *Kenneth Johnson, et al v. Georgia Bureau of Investigation, et al* case number: 1:23–cv–04218 and *Kenneth Johnson, et al v. Georgia Department of Public Health,* case number: 1:24–cv–05140.   The Plaintiff's have been adversely effected by deprivation of rights, conspiracy against rights, intentional infliction of emotional distress, ongoing denial of Constitutional Due Process rights under the Fifth, Seventh, and Fourteenth Amendments.

emboldened to act "clearly absent of jurisdiction" with impunity after securing (tacit) approval from Eleventh Circuit Judicial Council Justices Wilson, Rosenbaum, Branch, Walker, and Beaverstock decision to turn a blind eye and neglect to protect and prevent in accordance with the Fourteenth Amendment and federal civil rights statutes[1], and in contravention of federal and state criminal laws[2] (Exhibit 15) regarding Defendant-LMM's fraud and felonious overt acts the judicial council was aware of[3] (Exhibit 16), joined the murder cover-up conspiracy

---

[1] See 42 U.S. Code § 1986 - Action for neglect to prevent -
https://www.law.cornell.edu/uscode/text/42/1986

[2] See *Elliott v. Peirsol*, 1 Pet. 328, 340, 7L. Ed. 164; *Old Wayne Life Ass'n v. McDonough*, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345." - "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal." See also *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S. Ct. 116 (1920)

[3] 18 U.S. Code § 4 - Misprision of felony - Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under

2

scandal[4] of the Johnson's minor son Kendrick Lamar Johnson, by the Lowndes County Georgia Sheriff's Office, Valdosta-Lowndes Regional Crime Labratory, and Georgia Bureau of Investigation involving a multitude of racketeering influenced corrupt organization (RICO) predicate criminal acts, when they used their official position for more than two years in *Kenneth Johnson, et al v. Georgia Bureau of Investigation, et al*, and *Kenneth Johnson, et al v. Georgia Department of Public Health,* acting under color of law, disturbing well-settled caselaw and running afoul of longstanding United States Supreme Court precedence by assisting, aiding, and providing comfort to the co-conspirators involved in the murder scandal cover-up of the Johnson's minor son, including but not limited too overt acts violating  18 U.S.C. § 1001, 18 U.S.C. § 242, and GA Code § 16-10-20.1.

O.C.G.A. § 16-4-8 states a person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and <u>any one or more of such persons does any overt act to effect the object of the conspiracy</u>. The statute makes clear that anyone who knowingly and

---

<u>this title or imprisoned not more than three years, or both</u>.
https://www.law.cornell.edu/uscode/text/18/4

[4] GA Code § 16-4-8 states a person commits the offense of conspiracy when "any one or more of such persons does any overt act to effect the object of the conspiracy." See https://law.justia.com/codes/georgia/title-16/chapter-4/section-16-4-8/

willingly joins an ongoing conspiracy is considered a member, just as much as if they had been part of the original agreement.

In a conspiracy to cover up a murder and obstruct justice in the state of Georgia, an overt act in the furtherance of the conspiracy, whether it be hiding a body or making false filings in court to assist members of the conspiracy to avoid the due administration of justice, attaches that person to the conspiracy as if they were an original member!

The public record is unambiguously clear, Defendant-LMM, Defendant-SEG, and the U.S. District Court for the Northern District of Georgia (hereinafter "DCG") itself were required by law to deny relief to the defendants in *Johnson v. GBI*, and *Johnson, v. DPH* in the murder cover-up conspiracy scandal of the Plaintiff's minor son Kendrick based on the "clean hands"[5] doctrine and further mandated by law to contact authorities regarding clear evidence of a vicious crime

---

[5] See Clean Hands Doctrine - "The clean hands doctrine is based on the maxim of equity which states that one "who comes into equity must come with clean hands." This doctrine requires the court to deny equitable relief to a party who has violated good faith with respect to the subject of the claim. The purpose of the doctrine, as explained in *Colby Furniture Company, Inc. v. Belinda J. Overton* is to prevent a party from obtaining relief when that party's own wrongful conduct has made it such that granting the relief would be against equity and good conscience. However, as noted by the U.S. Supreme Court in *Keystone Driller Co. v. General Excavator Co.* 290 U.S. 240, 245 (1933), "such a wrongful act must have an immediate and necessary relation to the equity" that is being sought. https://www.law.cornell.edu/wex/clean_hands_doctrine

and scandalous public corruption under RICO laws covering up of the crimes by local, state, and federal authorities.[6]

The Defendants instead joined the conspiracy using their official positions as presiding U.S. District Court judges acting under color of law[7] providing aid, comfort, and relief to unindicted felons, thereby violating the Johnson's constitutionally protected rights further highlighting Defendant-LMM and Defendant-SEG being joined at the hip with and members of a racketeering influenced corrupt organization that covered-up the murder of Kendrick Johnson!

United States Supreme Court rulings in *District of Columbia v Wesby*, 138 S. Ct. 577, 589, 199 L.Ed. 2d 453 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct 1092, 89 L.Ed. 2d 271 (1986)) affirm the doctrine of qualified immunity protecting "all but the plainly incompetent or those who knowingly violate the law." thereby negating and abrogating any judicial claim of absolute immunity in spite of engaging in egregious, nefarious, and felonious activities depriving and interfering with the Plaintiff's constitutionally protected rights.

---

[6] 18 U.S. Code § 4 - Misprision of felony - Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.
https://www.law.cornell.edu/uscode/text/18/4

[7] 18 U.S.C. § 242 makes it a federal crime for anyone acting "under color of any law" to willfully deprive individuals of their Constitutional rights with penalties ranging from one year to life imprisonment.
https://www.law.cornell.edu/uscode/text/18/242

The matter before this Honorable Court is proper and timely.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This action is authorized and instituted pursuant to provisions under *Bivens v. Six Unknown Narcotics Agents* 403 U.S. 388 (1972).

3. The actions, deprivation of rights, conspiracy to interfere with rights, and conspiracy against rights commenced within the jurisdiction of the United States District Court for the Northern District of Georgia.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff's are Kenneth Johnson and Jacquelyn Jonson. Plaintiff's address is 2800 Tyndall Drive, Valdosta, Georgia 31602.

Defendant-LMM

6. Defendant Chief Judge Leigh Martin May is the chief judge of the U.S. District Court for the Northern District of Georgia and was appointed by former U.S. President Barack Obama. She joined a conspiracy that covered up the murder of the Plaintiff's minor son Kendrick, used her position as judge to deprive and interfere with the Plaintiff's protected rights, and she entered a materially false, fraudulent and felonious Order and Final Judgment without any due process while

6

she presided over their case. Chief Judge May is sued in her official capacity. Her workplace address is 75 Ted Turner Dr., Atlanta Georgia 30303

Defendant-SEG

7. Judge Sarah Elisabeth Geraghty is a a judge at the U.S. District Court for the Northern Districrt of Georgia and was appointed by former U.S. President Joseph Biden. She joined a conspiracy that covered up the murder of the Plaintiff's minor son Kendrick, used her position as judge to deprive and interfere with the Plaintiff's protected rights. Judge Geraghty is sued in her official capacity. Her workplace address is 75 Ted Turner Dr., Atlanta Georgia 30303

8. Between the dates of September 19, 2023 to March 9, 2026, the Defendants acting under color of law, used their position as presiding judge in the matters of *Kenneth Johnson, et al v. Georgia Bureau of Investigation, et al* (hereinafter "*Johnson v. GBI)*", and *Kenneth Johnson, et al v. Georgia Department of Public Health* (hereinafter "*Johnson v. DPH*"), acting in "clear absence of jurisdiction" committing fraud upon the court, when they intentionally entered materially false, fraudulent, and felonious Orders to the benefit of the Defendant's in both cases effectively joining the conspiracy[8], that in addition to violating numerous federal and state criminal statutes, deprived and interfered with the Johnson's constitutionally protected rights.

---

[8] See *Fiswick v. United States*, 329 U.S. 211 (1946); See also *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986)

7

9.  The causes of action herein arose during this time period.

### RELAVANT BACKGROUND AND FACTS RELATING TO THE
### DEPRIVATION OF RIGHTS, CONSPIRACY TO INTERFERE WITH RIGHTS

10. Kendrick Johnson (Exhibit 1), the minor child of Plaintiff's Kenneth and Jacquelyn Johnson, was murdered in the Lowndes County High School where he attended, during school hours, in an unsupervised gymnasium with a cause of death of non accidental blunt force trauma.  Exhibit 2

11. School resource officer and first responder Michael Adams reports Kendrick's face "was severely disfigured and swollen. The only identifying feature to the victim  that I observed was the long dreadlocks." Exhibits 3 & 4

12. First responders from the South Georgia Medical Center Mobile Healthcare Service on January 11, 2013 cited, "bruising noted to the right jaw", and superficial abrasions on KJ's right wrist and finger on his left hand. Exhibit 12 (Note: last page blurred from being altered prior to delivery to Plaintiff's in an Open Records Request)

13. Numerous crime scene photographs of Kendrick's injuries taken by authorities that show severe non accidental blunt force trauma.  Exhibit 14 shows a hematoma and depressed contour deformity consistent with a skull fracture.

14. Georgia Code §16-10-20.1(a) makes it unlawful to alter, conceal, cover-up, or create a document and file, enter, or record in a public record or court of this

8

state or of the United States knowing or having reason to believe the document has been altered or contains materially false, fictitious, or fraudulent information.

15. Documentation from the FBI case file for Kendrick Lamar Johnson indicates, that an investigator told the coroner (*name redacted*) "that an autopsy was not needed because the death was an accident.", indicative of collaboration to officially present a false narrative as well as a veiled threat to the coroner for his intent to follow protocol. Exhibit 11

16. Local authorities would then get special permission to have the Plaintiff's minor son's body taken to the Valdosta-Lowndes Regional Crime Laboratory, a component of the Valdosta Police Department outside of standard protocol.

17. Exhibit 10 illustrates the unnatural appearance changes to the body of Kendrick Lamar Johnson while under the absolute control of the local and state authorities in Georgia and prior to being received by the funeral home dirctor.

18. Material date and timestamp descrepencies concerning the last times the Plaintiff's minor son was last seen alive, when his body was "officially" discovered, even evidence from the Kendrick Johnson FBI case files illustrating employees for the Lowndes County School District were less than honest about when the school wrestling team left for the state tournament on January 10, 2013. See Exhibit 13

19. Local and state authorities collaborated, colluded, and conspired to cover-up the murder of Kendrick Johnson claiming the teen caused his own death when he reached down inside a gymnasium mat standing six feet tall, to retrieve his shoe, fell inside the mat from a crawling belly position with such force that his body disappeared inside the mat without anyone else taking notice, got stuck and suffocated by accident.

20. A report from the Valdosta-Lowndes County Regional Crime Laboratory falsely claims, "There appeared to be no signs of blunt force trauma on Johnson's face or body. There appeared to be no visible signs of wounds on Johnson's body." Exhibit 5

21. Detective Gerardo Morales reports, "An examination of the decedent by the local authorities did not reveal the presence of any external trauma." Exhibit 6

22. Georgia Buruea of Investigation Medical Examiner Dr. Maryanne Kraft in her autopsy report writes, "No significant injuries identified" Exhibit 7

23. Authorities fabricated their reports concerning crime scene evidence so that the reported lies about the crime scene would logically be consistent with the invented narrative they were presenting.

24. James Thornton reported that the shoe authorities claimed Kendrick was reaching for inside the mat and a pair of shoes inside the mat with Kendrick's

10

body, were both "saturated in blood"[9] yet a review of those evidences reveal a total absence of blood, further proof of a staged crime scene, invented narrative, and false propaganda. Exhibits 8 & 9

25. Authorities in Georgia have maintained these blatant lies, seriously breaching the publics trust, and further continuing with the pattern of overt acts concerning the murder cover-up scandal of the Johnson's minor son Kendrick.

26. On September 19, 2023 the Plaintiff's filed the action in *Kenneth Johnson, et al v. Georgia Bureau of Investigation*, pursuant to provisions under the Fourteenth amendment codified as 42 U.S.C §1983 and 42 U.S.C §1985, pertaining to the GBI's involvement with covering up the premeditated murder of the Johnson's minor son Kendrick subsequently violating their protectd rights under the U.S. Constitution.

27. On or about May 21, 2024, the Johnson's petitioned the Eleventh Circuit Court of Appeals for *Writ of Mandamus* to direct the District Court to rule on the Defendants' frivolous bad faith motions to dismiss, to direct the District Court to rule on the Plaintiffs' motion for leave to amend their Complaint, to direct the District Court to lift the stay of discovery to remove current barriers depriving the Plaintiffs' of their constitutionally protected civil rights to Due Process under the

---

[9] See Exhibit 7-5 - "Crime Scene Item #'s 7, 8, and 10 were saturated in blood so they were placed into drying cabinet # 1 and I maintaned the keys."

11

law, and to direct the presiding judge to come into compliance with 28 U.S.C. § 144 and self-recuse.

28. On May 31, 2024, Defendant-LMM entered a materially false and fraudulent Final Judgment in violation of 18 U.S.C. § 1001 which prohibits knowingly and willfully making false or fraudulent statements, or concealing information, in "any matter within the jurisdiction" of the federal government of the United States [10] and GA Code § 16-10-20.1, dismissing the Plaintiff's Complaint without any due process to the benefit, aid, and protection of the defendants[11], subsequently mooting the Johnson's petition for *Writ of Mandamus*.

29. The Johnson's appealed Defendant-LMM's illegal dismissal of their Complaint without any due process and on February 21, 2025, the Eleventh Circuit Court of Appeals reversed the felonious Order and Final Judgment, further citing procedural due process violations sending the case back to the district court for further review.

---

[10] 18 U.S. Code § 1519 makes it a federal crime punishable with up to twenty years in prison to falsify or make false entry in any record or document with the intent to impede, obstruct, or influence the proper administration of any matter within the jurisdiction of any department or agency of the United States. - https://www.law.cornell.edu/uscode/text/18/1519

[11] 18 U.S. Code § 3 Accessory after the fact, makes it a federal crime punishable with up to 15 years in prison for knowingly assisting an offender avoid punishment for his offense. - https://www.law.cornell.edu/uscode/text/18/3

30. At some point after the Eleventh Circuit's reversal of Defendant-LMM's materially false and felonious Final Judgment, the defendant's in the case petitioned the appeals court ex parte communication, for a rehearing.

31. On May 19, 2025 the Eleventh Circuit denied the defendant's in the case a rehearing.

32. On or about March 4, 2025, the Johnson's filed a Fourth Amended Complaint in this Court in compliance with Orders from the Eleventh Circuit Court of Appeals against the Georgia Bureau of Investigation and Lowndes County Georgia pursuant to provisions under the Fourteenth Amendment to the U.S. Constitution codified as 42 U.S.C §1983, 42 U.S.C §1985, 42 U.S.C §1986 with the expectation that Defendant-LMM would come into compliance with 28 U.S.C. § 144 and self-recuse.

33. Instead, Defendant-LMM entered an order dismissing the Johnson's fourth amended complaint without any due process.

34. On or about May 2, 2025, the Johnson's filed a motion for leave to file a fifth amended complaint that included Defendant-LMM as a defendant in *Kenneth Johnson, et al v. Georgia Bureau of Investigation, et al* for depriving and interfering with the Johnson's constitutionally protected rights while acting under color of law in her official capacity.

13

35. Defendant-LMM would finally come into compliance with 28 U.S.C. § 144 and recuse herself due to documented prejudices and overt acts in her official capacity while acting under color of law that where the "clear absence of jurisdiction" existed.

36. The Johnson's cases were both reassigned to Defendant-SEG where she dismissed the Fifth Amended Complaint, instructed the Johnson's to file another complaint titled Second Amended Complaint and granted them prior leave for the filing.

37. The Johnson's complied and filed a new Second Amended Complaint, consistent with provisions of orders from the Eleventh Circuit, naming the Georgia Bureau of Investigation as the primary and four co-defendants.

38. The Georgia Buruea of Investigation refiled its motion to dismiss the Johnson's Complaint erroneously making the same lack of jurisdiction eleventh amendment state sovereign immunity that did not survive the Johnson's appeal, therefore without legal merit and clearly abusive litigation based on Eleventh Circuit standard of review.[12]

39. Each of the other defendant's filed erroneous motion's to dismiss the Johnson's Complaint without due process and also contemptuous to active orders from the Eleventh Circuit Court of Appeals.

---

[12] See *J.C. Penney Corporation, Inc. v. Oxford Mall, LLC*, No. 22-12461 (11th Cir. 2024)

40. All of the defendant's in the case also filed motions to stay discovery based on arguments without legal merit.

41. Defendant-SEG would grant the defendant's motions to stay discovery and further retaliated against the Johnson's, threatening to dispose of their entire case based on the erroneous findings by Defendant-LMM that the GBI had sovereign immunity, in spite of that claim failing on appeal and further not an affirmative defense in a Fourteenth Amendment rights violations civil action!

42. Defendant-SEG knew or should have known that the GBI does not have sovereign immunity when they violate the rights of an individual under the Fourteenth Amendment and threatening to dispose of the Johnson's entire case for a second time without due process, deprived and interfered with their constitutionally protected ritghts!

43. On or about September 10, 2025, the Johnson's objected to Defendant-SEG's retaliatory and felonious Order (*Kenneth Johnson, et al v. GBI, et al* case number: 1:23−cv−04218, Dkt. 169) citing the Fourteenth Amendment, well-settled case law, and longstanding U.S. Supreme Court precedence.

44. On or about September 26, 2025 the Johnson's submitted to the Court a motion for Defendant-SEG to recuse in accordance with 28 U.S.C. § 455 for continuing the pattern established by Defendant-LMM using their official capacity

15

as federal judge and acting under color of law to deprive and interfere with the Johnson's constitutionally protected right.

45. On March 2, 2026 more than nine hundred days after the commencement of these proceedings, Defendant-SEG dismissed the Plaintiff's Complaint in *Johnson et al., v. GBI et al.*, without any due process the same as Defendant-LMM, without disposing of any of the Plaintiff's evidence the same as Defendant-LMM, thumbing her nose at the Federal Rules of Civil Procedure the same as Defendant-LMM, furthering a RICO conspiracy the same as Defendant-LMM, using her official capacity to provide aid and comfort to unindited felons involved in the covering up of the murder of the Plaintiff's minor son Kendrick Lamar Johnson the same as Defendant-LMM, thus operating in "clear absence of jurisdiction" bringing rise to this Complaint.

46. On March 3, 2026, Plaintiff's initiated these proceedings with the Clerk of the Court. (Dkt. 1)

47. The Court's random Judge selection process assigned Defendant-SEG as the presiding judge (Exhibit 17) to a case she was a party too mandating immediate recusal.[13]

---

[13] 28 U.S.C. § 455 mandates that a federal judge must disqualify themselves (self-recuse) in any proceeding where their impartiality might reasonably be questioned, which includes situations where a reasonable person would believe the judge is biased. This is an objective, self-enforcing standard aimed at ensuring the appearance of fairness. See https://www.law.cornell.edu/uscode/text/28/455

16

48. Defendant-SEG did not immediately recuse herself from this case nor from *Johnson v. DPH* where the Johnson's had submitted several motion for recusal under 28 U.S.C. § 455 where her prejudice was blatant and Judge Geraghty refused to complay with the law, a pattern demonstrated throughout these proceedings by herself and Chief Judge May.

49. On March 9, 2026, in retaliation for beginning the matter before the Court, Defendant-SEG dismissed *Johnson v. DPH* without any due process, depriving the Johnson's of full and fair opportunity to litigate.

50. After Defendant-SEG retaliated and illegally dismissed *Johnson v. DPH*, did she came into compliance with federal mandates and recused herself from these proceedings.

## FIRST CAUSE OF ACTION

### DEPRIVATION OF RIGHTS

51. "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal. *Elliott v. Peirsol*, 1 Pet. 328, 340,

7L. Ed. 164; *Old Wayne Life Ass'n v. McDonough*, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345."[14]

52. In *Fiswick v. United States*, 329 U.S. 211 (1946) and *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986) the U.S. Supreme Court and Eleventh Circuit Court of Appeals affirms and reaffirms that conspiracy statute of limitations begins to run on the date of the last overt act in furtherance of the conspiracy.

53. In *Manufacturers'Finance Co. V. McKey*, 294 U.S. 442 (1935) and *Keystone Driller Co. V. Gen Excavator Co.*, 290 U.S. 240, 245 (1933) the United States Supreme Court determined that a party who comes into a court of equity must come with "clean hands"[15] and is required to deny equitable relief to a party who has acted inequitably with respect to the subject of the claim.[16]

---

[14] See *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S. Ct. 116 (1920)

[5] See *Colby Furniture Co. v. Overton*, 299 So. 3d 259.

[16] See Clean Hands Doctrine - "The clean hands doctrine is based on the maxim of equity which states that one "who comes into equity must come with clean hands." This doctrine requires the court to deny equitable relief to a party who has violated good faith with respect to the subject of the claim. The purpose of the doctrine, as explained in *Colby Furniture Company, Inc. v. Belinda J. Overton* is to prevent a party from obtaining relief when that party's own wrongful conduct has made it such that granting the relief would be against equity and good conscience. However, as noted by the U.S. Supreme Court in *Keystone Driller Co. v. General Excavator Co.* 290 U.S. 240, 245 (1933), "such a wrongful act must have an immediate and necessary relation to the equity" that is being sought. https://www.law.cornell.edu/wex/clean_hands_doctrine

54. On May 31, 2024 Defendant-LMM dismissed the Johnson's case after Mr. Johnson filed an affidavit of bias or prejudice of a judge pursuant to 28 U.S.C. § 144[17], the federal statute that prohibited her further involvement with the case and after she physically received her copy of the Appellant's petition for writ of mandamus requesting the Eleventh Circuit to enforce mandates under 28 U.S.C. § 144 requiring the district court to assign another judge to hear the case and to further provide instructions to the district court regarding the Appellant's due process rights to discovery.

55. Defendant-LMM never accepted as true all of the allegations in the Plaintiffs' Complaint[18] nor did she construe the Plaintiff's allegations liberally as pro se litigants[19] demonstrated by her materially false, fraudulant, and felonious May 31, 2024 Final Judgment.

---

[17] See 28 U.S. Code § 144 - Bias or prejudice of judge - "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."
https://www.law.cornell.edu/uscode/text/28/144

[18] See *Harry v. Marchant*, 237 F.3d 1315, 1317 (11th Cir. 2001) - the court "accepts as true all of the allegations in the Complaint and  views them in the light most favorable to the plaintiff."  see also *St. Charles Foods. Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999), *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[19] See *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*, 949 F.3d 1302, 1304 (11th Cir. 2020) - the Court also construes "the allegations in a pro se complaint liberally, in the light most favorable to the plaintiff."

56. None of the defendant's in the cases presided over by Defendant-LMM denied any of the Plaintiffs' allegations as presented to Defendant-LMM with admissible evidence supporting each set of allegations in the Johnson's Complaint.

57. The standard of the Eleventh Circuit and every circuit in the United States is that the Court accept as true all the allegations in a Plaintiff's complaint, views the "facts" in the most favorable "light" most favorable to the plaintiff, and should there be a conflict between an exhibit and the content of a parties filing, even if the conflict be between the Plaintiffs complaint and an exhibit, the Eleventh Circuit standard is that the exhibit has control.

58. In spite of this Eleventh Circuit standard, Defendant-LMM did not consider or mention any of the Johnson's exhibits as controlling evidence, in her Final Order.

59. Furthermore, the Final Order and Judgment fail to appropriately apply the "plausibility"[20] standard to any set of allegations in the Johnson's Complaint in spite of the controlling evidences before the Court far exceeding the plausibility standard of the Eleventh Circuit [21] and U.S. Supreme Court which notes a complaint must make factual allegations that create more than a suspicion of a legally cognizable cause of action, on the assumption that all of the allegations in

---

[20] See *Ashcroft v, Iqbal*, 556 U.S. 662, 678 (2009)
[21] See *American Detal Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)

the complaint are true, "even if doubtful in fact."[22] and that a complaint must allege enough facts, taken as true, to raise the reasonable expectation that "discovery will reveal evidence of illegal agreement."

60. In *Johnson v. GBI*, the Johnson's provided Defendant-LMM with enough factual allegations that created "more than a suspicion of a legally cognizable cause of action", they included evidence that showed the Georgia authorities followed through with their scheme by falsifying official records. Discovery would undoubtedly reveal additional evidences and entities involved with the conspiracy.

61. Defendant-LMM also falsely claims the "Plaintiffs have not alleged that these parties have any agreement or understanding with one another, especially not an agreement to violate Plaintiffs' rights." See *Kenneth Johnson, et al v. GBI, et al* case number: 1:23−cv−04218−LMM (Dkt. 102, p. 13)

62. The Johnson's allege and/or infer an agreement between Georgia officials multiple times in the complaint that was before Defendant-LMM, explicitly stating an "agreement between the Defendants to violate a multitude of the Plaintiff's civil rights and federal and state criminal statutes." See *Kenneth Johnson, et al v. GBI, et al* case number: 1:23−cv−04218−LMM (Dkt. 43, ¶ 168)

63. To adequately plead a civil rights conspiracy, Plaintiffs must allege that Defendants reached an agreement to violate their rights. See *Rowe v. City of Ft.*

---

[22] See *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555

*Lauderdale*, 279 F.3d 1271, 1283–84 (11th Cir. 2002); *NAACP v. Hunt*, 891 F.2d 1555, 1566–63 (11th Cir. 1990).

64. The official record shows the Johnson's alleged Georgia officials had an agreement to violate their protected rights directly negating claims made by Defendant-LMM in her May 31, 2024 Final Order and Judgment in *Kenneth Johnson, et al v. GBI, et al.*

65. Defendant-LMM knew or should have known that inventing materially false claims in a U.S. District Court Final Order and Judgment violated Title 18 U.S.C. § 1001 prohibiting knowingly and willfully making false or fraudulent statements, or concealing information, in "any matter within the jurisdiction" of the federal government of the United States, even by mere denial, and that whoever knowingly or willfully makes false or fraudulent statements in "any matter within the jurisdiction" of the federal government of the United States  can be fined and imprisoned for up to 5 years.

66. O.C.G.A. § 16-4-8 states a person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy.

67. The statute makes clear that anyone who knowingly and willingly joins an ongoing conspiracy is considered a member, just as much as if they had been part of the original agreement.

68. Not only did the Johnson's allege an agreement between Georgia authorities to violate their civil rights, they provided the district court with evidence supporting the allegations in each cause of action. The Final Order does not consider or even mention any of the exhibits attached to the complaint nor does it consider or mention any other exhibits on the official record filed by the Johnson's.

69. In *Offutt v. United States*, 348 U.S. 11 (1954) the U.S. Supreme Court held that federal judicial proceedings must maintain the "appearance of justice" to ensure public confidence in fairness.

70. The Eleventh Circuit standard is all allegations and "inferences" of rights violations must be construed liberally and in the light most favorable to pro se plaintiffs[23].

71. Defendant-LMM acted with "clear absence of jurisdiction" and in contravention of federal and state laws[24], when she joined the murder cover-up

---

[23] See *Madera v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). see also *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019), *St. Charles Foods. Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819(11th Cir. 1999), *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999), *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*, 949 F.3d 1302, 1304 (11th Cir. 2020).

23

conspiracy scandal of the Johnson's minor son Kendrick Lamar Johnson, by the Lowndes County Georgia Sheriff's Office, Valdosta-Lowndes Regional Crime Labratory, and Georgia Bureau of Investigation involving a multitude of racketeering influenced corrupt organization (RICO) predicate criminal acts, when she used her official position in *Johnson v. GBI*, and *Johnson v. DPH,* acting under color of law by assisting, aiding, and providing comfort to the co-conspirators involved in said murder scandal cover-up, including but not limited too overt acts violating a multitude of federal statutes including but not limited too,  18 U.S.C. § 1001, 18 U.S.C. § 242, and GA Code § 16-10-20.1.

72. Defendant-LMM deprived the Johnson's of their constitutionally protected rights under the law.

73. 18 U.S.C. § 242 criminalizes the deprivation of civil rights under color of law and anyone using their position to deprive the Plaintiff's of their protected rights can be imprisoned for any term of years or for life, or both.  It is not necessary that the offense be motivated by racial bias or by any other animus.

SECOND CAUSE OF ACTION

---

[24] See *Elliott v. Peirsol*, 1 Pet. 328, 340, 7L. Ed. 164; *Old Wayne Life Ass'n v. McDonough*, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345." - "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal." See also *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S. Ct. 116 (1920)

## CONSPIRACY TO INTERFERE WITH RIGHTS

74. The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First Cause of Action as a separate cause of action against Defendant-LMM for conspiracy to interfere with their constitutionally protected rights by Defendant-LMM working on behalf and to the benefit of the denfendant's in *Johnson v. GBI*, and *Johnson v. DPH*, thumbing her nose at the Federal Rules of Civil Procedure and joining a murder cover-up conspiracy scandal, prosecutable under RICO statutes, and operating in "clear absence of jurisdiction" bringing rise to this Complaint.

## THIRD CAUSE OF ACTION

## DEPRIVATION OF RIGHTS

75. In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

76. Fraud upon the court has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery

cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968)

77. Defendant-SEG became involved with the Johnson's case in *Johnson et al. v. GBI et al.*, after Defendant-LMM came into compliance with the statutory mandate for her to recuse herself from the Johnson's cases for bias or prejudice of a judge.

78. Defendant-SEG reset the proceedings from the chaos created by Defendant-LMM by dismissing the Johnson's Fifth Amended Complaint and instructing the Johnson's to file another complaint titled Second Amended Complaint and granted them prior leave for the filing.

79. The Johnson's complied and filed a new Second Amended Complaint, consistent with provisions of orders from the Eleventh Circuit, naming the Georgia Bureau of Investigation as the primary and four co-defendants.

80. The Georgia Buruea of Investigation refiled its motion to dismiss the Johnson's Complaint erroneously making the same lack of jurisdiction eleventh amendment state sovereign immunity that did not survive the Johnson's appeal to the Eleventh Circuit Court of Appeals, therefore without legal merit and clearly abusive litigation based on Eleventh Circuit standard of review.[25]

---

[25] See *J.C. Penney Corporation, Inc. v. Oxford Mall, LLC*, No. 22-12461 (11th Cir. 2024)

81. Each of the other defendant's filed erroneous motion's to dismiss the Johnson's Complaint without due process and also contemptuous to active orders from the Eleventh Circuit Court of Appeals.

82. All of the defendant's in the case also filed motions to stay discovery based on arguments having no legal merit.

83. Defendant-SEG would grant the defendant's motions to stay discovery and further retaliated against the Johnson's, threatening to dispose of their entire case based on the erroneous findings by Defendant-LMM that the GBI had sovereign immunity, in spite of that claim failing on appeal and further not an affirmative defense in a Fourteenth Amendment rights violations civil action!

84. Defendant-SEG never accepted as true all of the allegations in the Plaintiffs' Complaint[26] nor did she construe the Plaintiff's allegations liberally as pro se litigants[27] demonstrated by her materially false, fraudulant, and felonious February 2, 2026 Order and Final Judgment, like Chief Judge May, dismissing the Plaintiff's Complaint without Due Process running afoul of the U.S. Constitution, Eleventh

---

[26] See *Harry v. Marchant*, 237 F.3d 1315, 1317 (11th Cir. 2001) - the court "accepts as true all of the allegations in the Complaint and views them in the light most favorable to the plaintiff." see also *St. Charles Foods. Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999), *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[27] See *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*, 949 F.3d 1302, 1304 (11th Cir. 2020) - the Court also construes "the allegations in a pro se complaint liberally, in the light most favorable to the plaintiff."

Circuit standards, well-settled caselaw, and longstanding U.S. Supreme Court precedence.

85. Defendant-SEG knew the Eleventh Circuit Court of Appeals refused to affirm the GBI's motion to dismiss the Johnson's lawsuit for failure to state a claim, therefore failure to state a claim is not an affirmative defense in the *Johnson et al., v. GBI et al.* and only a corrupted judge would completely dismiss the same lawsuit for failure to state a claim when that argument did not survive the Eleventh Circuit's decision not once but twice!

86. Defendant-SEG knew or should have known that once a matter goes to a higher court on appeal of a final judgment, and the appeals court does not affirm a party's motion to dismiss for lack of jurisdiction amongst, she lacks the authority to threaten disposing of the Johnson's case against the GBI, because the Johnson's did not comply with a materially false finding by Defendant-U.S. District Court for the Northern District of Georgia (hereinafter "USNDG") in addition to the unprecedented unlawful and felonious order[28] entered by her.

87. O.C.G.A. § 16-4-8 states a person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and <u>any one or more of such persons does any overt act to effect the object of the conspiracy</u>.

---

[28] See *Kenneth Johnson, et al v. GBI, et al* case number: 1:23–cv–04218, Dkt. 169

88. The statute makes clear that anyone who knowingly and willingly joins an ongoing conspiracy is considered a member, just as much as if they had been part of the original agreement.

89. Defendant-SEG knew or should have known that the findings by Defendant-LMM purporting the GBI had sovereign immunity therefore the Johnson's pursuit of civil action against the state agency was futile, was in direct conflict with the Fourteenth Amendment, the intent of the U.S. Congress in section five of the Fourteenth Amendment, and longstanding U.S. Supreme Court precedence whe she threatened to dispose of the Johnson's entire case for a second time without due process, depriving and interfered with their constitutionally protected ritghts!

90. On or about September 10, 2025, the Johnson's objected to Defendant-SEG's retaliatory and felonious Order (*Kenneth Johnson, et al v. GBI, et al* case number: 1:23–cv–04218, Dkt. 169) citing the Fourteenth Amendment, well-settled case law, and longstanding U.S. Supreme Court precedence.

91. On or about September 26, 2025 the Johnson's submitted to the Court a motion for Defendant-SEG to recuse in accordance with 28 U.S.C. § 455 for continuing the pattern established by Defendant-LMM using their official capacity as federal judges and acting under color of law to deprive and interfere with the Johnson's constitutionally protected right.

29

92.   Defendant-SEG deprived the Johnson's of their constitutionally protected rights under the law.

93. 18 U.S.C. § 242 criminalizes the deprivation of civil rights under color of law and anyone using their position to deprive the Plaintiff's of their protected rights can be imprisoned for any term of years or for life, or both.   It is not necessary that the offense be motivated by racial bias or by any other animus.

94. According to the U.S. Supreme Court, judges who knowingly violate the law, have no qualified immunity from civil liability[29].

95.      Judge Geraghty's overt acts under color of law, and Orders further the object of the conspiracy to cover-up the murder of the Johnson's minor son Kendrick Lamar Johnson, provided aid and comfort to Georgia authorities effectively obstructing the due administration of justice and depriving the Johnson's of their constitutionally protected rights.

96. On March 2, 2026 more than nine hundred days after the commencement of these proceedings, Defendant-SEG dismissed the Plaintiff's Complaint in *Johnson et al., v. GBI et al.*, following the same pattern as Chief Judge May denying them constitutional guarantees to due process, thumbing her nose at the Federal Rules of Civil Procedure, furthering a RICO conspiracy using her official capacity to

---

[29] *District of Columbia v Wesby*, 138 S. Ct. 577, 589, 199 LEd. 2d 453 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct 1092, 89 L.Ed. 2d 271 (1986)) - The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

provide aid and comfort to unindited felons involved in the covering up of the murder of the Plaintiff's minor son Kendrick Lamar Johnson thus operating in "clear absence of jurisdiction" bringing rise to this Complaint.

97. On March 3, 2026, Plaintiff's initiated these proceedings with the Clerk of the Court. (Dkt. 1)

98. The Court's random Judge selection process assigned Defendant-SEG as the presiding judge (Exhibit 17) to a case she was a party too mandating immediate recusal.

99. 28 U.S.C. § 455 mandates that a federal judge must disqualify themselves (self-recuse) in any proceeding where their impartiality might reasonably be questioned, which includes situations where a reasonable person would believe the judge is biased. See https://www.law.cornell.edu/uscode/text/28/455

100.    In *Offutt v. United States*, 348 U.S. 11 (1954) the U.S. Supreme Court held that federal judicial proceedings must maintain the "appearance of justice" to ensure public confidence in fairness.

101.    The test for appearance of impropriety from commentary 5 to Rule 1.2 is "whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge."

31

102. Defendant-SEG did not immediately recuse herself from this case nor from *Johnson v. DPH* where the Johnson's had submitted several motion for recusal under 28 U.S.C. § 455 where her prejudice was blatant and Judge Geraghty refused to complay with the law, a pattern demonstrated throughout these proceedings by herself and Chief Judge May.

103. On March 9, 2026, in retaliation for beginning the matter before the Court, Defendant-SEG dismissed *Johnson v. DPH* without any due process, depriving the Johnson's of full and fair opportunity to litigate.

104. After Defendant-SEG retaliated and illegally dismissed *Johnson v. DPH*, did she came into compliance with federal mandates and recused herself from these proceedings.

105. The illegal order and final judgment in *Johnson v. DPH* by Defendant-SEG, contained similar materially false and felonious claims both herself and Defendant-LMM dismissed *Johnson v. GBI* twice without constitutional due process mandates.

106. An example of a materially falsehood claimed by Defendant-SEG that is negated by the U.S. Constitution and longstanding U.S. Supreme Court precedence is the claim the GBI as an agent of the state has sovereign immunity under the Eleventh Amendment in a Fourteenth Amendment protected rights and 42 U.S.C §1983 civil action specifically enacted into law by the U.S. Congress for

32

southern states like Georgia that denied and continue to deny equal access and equal protection of state laws to people who look like the Johnson's.

107.    Section Five gives the U.S. Congress the explicit power to enforce through legislation the provisions of the article, thus the creation of the Enforcement Act of 1871 also known as the Ku Klux Klan Act and more significantly the Civil Rights Act of 1871 codified as 42 U.S.C §1983 - Deprivation of Rights, 42 U.S.C §1985 - Conspiracy to Interfere with Rights, and 42 U.S.C §1986 - Neglect to Protect Rights, implicitly abrogating the states' eleventh amendment immunity.

108.    In 1978, the US Supreme Court found congressional abrogation of eleventh amendment immunity in a fourteenth amendment context.

109.    Mr. Justice Stevens, writing for the majority in *Hutto v. Finney,* 437 U.S. at 693-94, recognized that the Act's broad language speaking to "any action or proceeding to enforce . . . [42 U.S.C. § 1983]" literally applied to actions against states.

110.    Additionally, the Third Circuit Court of Appeals found that a negligent failure to protect by the State, which includes agencies acting as the arm

of the State that are in a position to protect victims from the provisions of the statute is actionable.[30] The statute creates a legal duty!

111.     Other examples of blatant falsehoods in the March 2, 2026 Order was that some of the defendant's were not served properly.

112.     The Plaintiff's served all of the defendant's in the same manner using the same process server, Ancillary Legal Corporation, who serve hundreds of summons for civil actions commenced at Defendant-NDG each year, yet strangely enough only now during this case where fraud upon the court is evident, does the claim that the process server used by the Plaintiff's now don't know how to effect service of process upon a party to a matter at the Court. See Exhibit 18

113.     In addition to those "irregularities", Defendant-SEG does not dispose of any evidence and exhibits she purports were considered when determining had the defendant's come into this Court with Clean Hands in *Johnson v. GBI*.

114.     No where in the Order are any of the exhibits mentioned.[31]

115.     She makes no mention of first responders reports submitted to this Court such as that of Officer Michael Adams the Lowndes County High School resource officer who described the Johnson's minor son's face condition as being

---

[30] See *Clark v. Clabaugh*, 20 F.3d 1290, 1298 (3d Cir. 1994) (finding that negligence is sufficient to maintain § 1986 claim).
[31] See *Johnson v. GBI* (Dkt. 218)

"severely disfigured and swollen. <u>The only identifying feature to the victim  that I observed was the long dreadlocks.</u>" Exhibits 3 & 4"

116.    She makes no mention of the flagrantly false and fraudulent GBI autopsy datasheet. Exhibit 19

117.    Literally all actions during the proceedings by Defendant-SEG were "clearly absent of jurisdiction" and in violation of a multitude of federal and state criminal statutes including but not limited to  obstruction of the due administration of justice, fraud, and accessory to murder after the fact.

118.    "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. <u>They are not voidable, but simply void, and this even prior to reversal</u>. *Elliott v. Peirsol*, 1 Pet. 328, 340, 7L. Ed. 164; *Old Wayne Life Ass'n v. McDonough*, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345."[32]

119.    And with the dismissal of *Johnson v. DPH* without any due process, Defendant-SEG solidifies the fact that the state of Georgia "abridge the privileges" of the Johnson's and people who look like them, deprive the Johnson's of Liberty "without due process", and denies the Johnson's "equal protection of the laws", unambiguously inconsistent with the United States Constitution.

---

[32] See *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S. Ct. 116 (1920)

## FOURTH CAUSE OF ACTION

## CONSPIRACY TO INTERFERE WITH RIGHTS

120.    After nearly nine hundred days have passed since the Johnson's commenced the civil action in *Johnson et al., v. GBI et al.*, and more than five hundred days since the start of *Johnson v. DPH*, Defendant-SEG illegally dismissmed both actions brought before the court and without any due process under the law.

121.    Working on behalf and to the benefit of the denfendant's in *Johnson v. GBI* and *Johnson v. DPH*, thumbing her nose at the Federal Rules of Civil Procedure and joining a murder cover-up conspiracy scandal, prosecutable under RICO, and operating in "clear absence of jurisdiction" bringing rise to this Complaint.

122.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First and Third Cause(s) of Action as a separate cause of action  for conspiracy to interfere with their constitutionally protected rights.

## FIFTH CAUSE OF ACTION

FRAUD ON THE COURT DEPRIVING AND INTERFERING WITH RIGHTS

123.    In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial

36

machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

124.     Fraud upon the court has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968)

125.     The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First Cause of Action as a separate cause of action against Defendant-LMM   for fraud upon the court thereby depriving and interfering with their protected rights.

SIXTH CAUSE OF ACTION

FRAUD ON THE COURT DEPRIVING AND INTERFERING WITH RIGHTS

126.     In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or

influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

127.    Fraud upon the court has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968)

128.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First Cause of Action as a separate cause of action against Defendant-SEG  for fraud upon the court thereby depriving and interfering with their protected rights.

<u>SEVENTH CAUSE OF ACTION</u>

CONSPIRACY AGAINST RIGHTS

129.    In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his

38

judicial function --- thus where the impartial functions of the court have been directly corrupted."

130.    Fraud upon the court has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968)

131.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First through Sixth Causes of Action as a separate cause of action against Defendant-LMM and Defendant-SEG conspiring together engaging in fraud upon the court thereby depriving and interfering with their protected rights.

132.    The evidence concerning the murder, evidence concerning the conspiracy to coverup the murder, the undeniable false official reports and filings beginning January 2013 through the present day by local, state, and federal entities, the tampering with and altering evidence in violation of federal[33] and state[34] criminal statutes, illustrated by the unnatural progression in the appearance (Exhibit 10) of the Johnson's minor son Kendrick from the time his lifeless body was purportedly found at Lowndes County High School, until it was received by

---

[33] See 18 U.S.C. § 1519
[34] See Georgia Code § 16-10-94

his parents at the funeral home, skin blackened with excessive peeling, a crease in the forehead indicative of the absence of Kendrick's brain further implicating yet another entity in the conspiracy scandal, all of this presented to Defendant-LMM and Defendant-SEG by the Johnson's and still these judges pretextually purport to be considering meritless motions to dismiss the Johnson's complaints without any due process under the law, running afoul of the federal rules, in contempt of active Orders from the Eleventh Circuit Court of Appeals, and contrary to the "impartial task of adjudging cases that are presented for adjudication."[35]

133.    The public record is clear, Defendant-LMM, Defendant-SEG, and Defendant-DCG were required by law to deny relief to the co-conspirators in the murder cover-up conspiracy scandal of the Plaintiff's minor son Kendrick and further mandated by law to contact authorities regarding clear evidence of a vicious crime and scandalous public corruption under RICO laws covering up of the crimes by local, state, and federal authorities.[36]

---

[35] See *Kenner v. C.I.R.*, 387 F.3d 689 (1968) - Fraud Upon the Court: an "unconscionable plan or scheme which is designed to improperly influence the court in its decision". Such fraud must "defile the court itself" or be "a fraud perpetrated by officers of the court,"; See also *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)

[36] 18 U.S. Code § 4 - Misprision of felony - Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both. https://www.law.cornell.edu/uscode/text/18/4

134.    The material facts, public record, and totality of circumstances are clear, Defendant-LMM and Defendant-SEG are members of and co-conspirators in a racketeering influenced corrupt organization that covered-up the murder of the Johnson's minor son Kendrick, and both of their actions, independently and collectively were with "clear absence of jurisdiction" subsequently violating a multitude of the Plaintiff's constitutionally protected rights!

## EIGTH CAUSE OF ACTION

## DEPRIVATION AND INTERFERING WITH RIGHTS

135.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the Third, Fourth, Sixth, and Seventh Causes of Action as a separate cause of action against Defendant-SEG  for fraud upon the court thereby depriving and interfering with their protected rights.

## NINTH CAUSE OF ACTION

## RETALIATION

136.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the Third, Fourth, Sixth, and Seventh Causes of Action as a separate cause of action against Defendant-SEG  for retaliation thereby depriving and interfering with their protected rights.

## TENTH CAUSE OF ACTION

## CONSPIRACY TO RETALIATE

137.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First, Second, Third, Fourth, Sixth, and Seventh Causes of Action as a separate cause of action against Defendant-LMM  and Defendant-SEG  for fraud upon the court thereby depriving and interfering with their protected rights.

## ELEVENTH CAUSE OF ACTION

## DEPRIVATION AND INTERFERING WITH RIGHTS

138.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the Third, Fourth, Sixth, and Seventh Causes of Action as a separate cause of action against Defendant-SEG  for deprivation of rights.

## TWELTH CAUSE OF ACTION

## CONSPIRACY TO DEPRIVE AND INTERFERE WITH RIGHTS

139.    The Johnson's incorporates by reference the legal reasoning and factual analysis set forth in the First through Seventh Causes of Action as a separate cause of action against Defendant-LMM  and Defendant-SEG  for conspiracy to deprive and interfere with their protected rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare the conduct engaged in by Defendand-LMM and Defendant-SEG to be in violation of Plaintiff's constitutionally protected rights.

B. Declare the Defendant-LMM and Defendant-SEG  engaged in conduct that violated the criminal statutes concerning making materially false filings in matters within the jurisdiction of the United States particular with the intent to hinder and obstruct justice.

C.  Grant judgment to Plaintiff in the amount of $10,000,000,000.00 in compensatory damages, with pre- and post-judgment interest of ten percent.

D.    Grant judgment to Plaintiff in the amount of $10,000,000,000.00 for punitive damages, with pre- and post-judgment interest of ten percent.

E.    Grant such further relief as the court deems necessary and proper in the public interest.

F.    Grant Plaintiff any costs of this action, including reasonable attorney fees, expert witness fees, and litigation costs.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in the Complaint.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or

43

needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,

Dated:    March 19, 2026

/s/ *Kenneth Johnson*_____
Kenneth Johnson

/s/ *Jacquelyn Johnson*_____
Jacquelyn Johnson

2800 Tyndall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

KENNETH JOHNSON et al.,

Plaintiffs

v.

CHIEF JUDGE LEIGH MARTIN
MAY, in her official capacity et al.,

Defendants.

CIVIL ACTION NUMBER:
1:26-cv-1212-AT

FIRST AMENDED
COMPLAINT

JURY TRIAL DEMAND

## CERTIFICATE OF SERVICE

We hereby certify that we filed the foregoing *FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND* with the Clerk of the Court in person. We certify that we will serve upon and mail by United States Postal Service, certified registered return receipt the foregoing document to the following participants:

Respectfully submitted,

Dated:   March 19, 2026 .

*/s/ Kenneth Johnson*_____
Kenneth Johnson

*/s/ Jacquelyn Johnson*_____
Jacquelyn Johnson
2800 Tyndall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

Office of the United States Attorney General
Attn: Pam Bondi, Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

U.S. Attorney for the Northern District of Georgia
Attn: Theodore Hertzberg, U.S. Attorney
75 Ted Turner Dr. SW
Atlanta, GA 30303

Chief Judge Leigh Martin May
75 Ted Turner Dr. SW
Atlanta, GA 30303

Judge Sarah Elisabeth Geraghty
75 Ted Turner Dr. SW
Atlanta, Georgia 30303

# Exhibit 1



# Exhibit 2

**FORENSIC DIMENSIONS**
MEDICAL DIAGNOSTIC SERVICES--ORLANDO
1630 BRIDGEWATER DRIVE
HEATHROW, FLORIDA 32746
(407) 333-3512

*William R. Anderson MD*

*M. A. Raven, RN*

**PVT-13**
**Autopsy Examination**

REPORT OF FORENSIC DIAGNOSTIC CONSULTATION

PATIENT:    JOHNSON, KENDRICK

AGE: 17        SEX: M

| | | | |
|---|---|---|---|
| DATE/DEATH: | 01/11/13 FOUND | TIME/EXAM: | 11:30 |
| DATE/EXAM : | 06/15/13 | REQUEST/BY: | JACQUELYN JOHNSON |
| DATE/REPORT: | 08/15/13 (ADDENDUM 09/21/15) | | |

ANATOMIC PATHOLOGIC FINDINGS:

1. Bllunt Force Trauma, Right Neck
   a. acute hemorrhage soft tissues of upper neck
   b. acute peri-osteal hemorrhage, posterior body, right mandible
   c. areas of acute hemorrhage involving carotid artery bifurcation, and carotid body

2. Blunt Force Trauma, Right Thorax*
   a. acute hemorrhage, soft tissues and intercostal musculature

3. Review of initial autopsy: ME01984 4000101-13
   a. pulmonary findings c/w rapid onset death
   b. findings not consistent with positional asphyxia

CAUSE OF DEATH:

BLUNT FORCE TRAUMA, RIGHT NECK, INVOLVING RIGHT
MANDIBLE, AND SOFT TISSUES, INCLUDING THE AREA OF THE
CAROTID BODY, CONSISTENT WITH INFLICTED INJURY

*BLUNT FORCE TRAUMA, RIGHT ANTERO-LATERAL THORAX

NOTE: UNEXPLAINED, APPARENT NON-ACCIDENTAL, BLUNT
FORCE TRAUMA: FURTHER INVESTIGATION IS INDICATED TO
DETERMINE THE ETIOLOGY OF THE INJURIES.

WILLIAM R. ANDERSON MD, PATHOLOGIST

Appendix I  P. 103

Johnson, Kendrick
PVT-13
Page 2

### REPORT OF FORENSIC DIAGNOSTIC CONSULTATION

**GROSS ANATOMICAL EXAMINATION:**
The autopsy is performed at the request of Jacquelyn & Kenneth Johnson in the Robert Bryant Funeral Home, prosector: Dr. William R Anderson, assisted by: Ms. Lynetta Oxendine. (*Second autopsy at Brown Funeral Home.)

**IDENTIFICATION:**
The identification of the body is made by funeral home identification tags.

**CLOTHING & PERSONAL EFFECTS:**
The body is received in a sliver metal casket and dressed in red shirt, under shirt, black slacks, sport shoes, wrist watch, and plastic undergarment.

**SCARS, TATTOOS, & SPECIAL FEATURES:**
Examination of the victim shows no signifcant areas of scarring or the presence of tattoos. There are no needle tracks or other cutaneous needle puncture sites other than those associated with medical therapy.

**GENERAL STATEMENT:**
The body is that of a normally developed, moderately well-nourished Black male appearing the stated age of 17 years, measuring 70" in length, and weighing approximately 160 lbs. The body has been previously embalmed and a prior autopsy has been performed. Evidence of moderate decomposition is noted, most prominent in the facial area. Areas of skin slippage are identified on the chest, abdomen and extremities, bilaterally, o/w post-mortem artifact. There is good preservation of the soft tissues of the musculo-skeletal system.

**EXTERNAL EXAMINATION:**
The hair is black; the eyes are autolyzed The conjunctival membranes exhibit no pallor, petechiae, or icterus. There is no periorbital trauma or edema.
The dentition is natural. There is no trauma to the lips or frenulae. (See Description of Injuries.)
The neck is normally formed, with no deformities. (See Description of Injuries.)
The chest is bilaterally symmetrical with no increase in the AP diameter, or width of the intercostal spaces. The breasts are normal male, with no masses or trauma.
The abdomen shows a moderate amount of subcutaneous fat, with no distention.
Genitalia are normal adult male, with no trauma.
The extremities are normally formed, with no evidence of muscle wasting, or edema. The skin shows no diffuse or discrete lesions, and no areas of abnormal pigmentation.

Appendix I  P. 104

Johnson, Kendrick
PVT-13
Page 3

## SPECIAL PROCEDURES:

The following special procedures are performed: Toxicology: None; Forensic Analysis: None; Hematology: None; Microbiology: None; Histology: Representative tissue sections are submitted.

## DESCRIPTION OF INJURIES:

Examination of the head and neck shows an area of contusion injury involving the right mandibular area, with moderate discoloration of the skin. Examination of the previously undissected area and sectioning of the skin reveals evidence of full-thickness cutaneous hemorrhage, extending into the subcutaneous fat.

Further dissection into the deep soft tissue reveals hemorrhage into the musculature with extension to the peri-osteal region of the inferior aspect of the posterior body of the right mandible. Focally, an area of intra-osseous hemorrhage is identified in an area of moderately prominent peri-osteal and soft tissue hemorrhage.

Examination of the right upper-neck reveals hemorrhage in the deep soft tissue and musculature adjacent to the bifurcation of the right common carotid artery and carotid body.

Examination of the soft tissues of the left neck area reveals no grossly-evident areas of hemorrhage.

*Examination of the area of discoloration involving the right anterior thorax reveals areas of possible hemorrhage into the soft tissues and intercostal musculature.

*Examination of the skin and soft tissues of the anterior left lower mandible area reveals areas of possible hemorrhage into the musculature.

## INTERNAL EXAMINATION:

VISCERA REMOVED AT INITIAL AUTOPSY IS NOT PRESENT WITH THE BODY

## MICROSCOPIC EXAMINATION:

*TISSUE SAMPLES COLLECTED 06/30/2013

### SOFT TISSUES: NECK

Microscopic examination of the soft tissues reveals areas of extravasated RBC's in specimens "A" and "B" taken from the right neck, as well as sections of mandible and soft tissues of the right neck. IHC stain for Hemoglobin B-chain, decorates the areas of extravasation in tissues showing moderate autolytic changes secondary to prolonged post-mortem interval. Specimen "C" taken from the soft tissues of the left neck show a few foci of extravasated RBC's, with no areas of significant aggregation of blood..

### SOFT TISSUES: RIGHT THORAX *

Microscopic examination of the soft tissues reveals areas of extravasated RBC's in 2 of 3 specimens obtained from the right thoracic area. (Muscle adjacent to these areas reveals no hemorrhage.)s

Appendix I  P. 105

Johnson, Kendrick
PVT-13
Page 4

## MICROSCOPIC EXAMINATION (CONT'D):

SOFT TISSUES: JAW *
Microscopic examination of the soft tissues reveals no confirmed areas of extravasated RBC's in 2 of 2 specimens obtained from the right mandibular area.

ME01984 4000101-13 (GBI)
Microscopic examination of the tissue slides received from the initial autopsy reveals moderately autolyzed tissues:
HEART:
  autolysis; no interstitial or replacement type fibrosis; no inflammation; no intraparenchymal hemorrhage; no necrosis; no vasculitis; no degenerative changes

LUNGS:
  autolysis; no inflammation in alveolar spaces or interstitial tissue; no bronchial inflammation; no atypia; no significant edema

PANCREAS:
  severe autolysis; no masses; no inflammation; no hemorrhage

LIVER:
  autolysis; no fatty metamorphosis; no acute inflammation; no necrosis or hepatocellular degeneration

SPLEEN & LYMPH NODES:
  autolysis; no reactive germinal follicles;

ADRENAL GLANDS:
  autolysis ; no masses; no inflammation; no hemorrhage

KIDNEYS:
  autolysis; no glomerular, tubular or vascular lesions; no inflammation

BRAIN:
  autolysis; no hemorrhage; no hypoxic or degenerative changes; no inflammation;

Appendix I  P. 106



Appendix I  P. 107



Appendix I  P. 108



Appendix I  P. 109



Appendix I  P. 110



Appendix I  P. 111



Appendix I  P. 112



Appendix I  P. 113



Appendix I  P. 114



Appendix I  P. 115



Appendix I  P. 116

# Exhibit 3

# Lowndes County Sheriff's Office
# Narrative Report

## Report No. 13-01-01520.1

**1**

Page 1 of 1

### REPORT NARRATIVE

On January 11, 2013 at 7:45 am, I received a missing person report from Sgt Craig Robey. The report stated at 0030, Jacquelyn Johnson reported her son, Kendrick Lamar Johnson missing. At approximately 8:00 am, I arrived at Lowndes High School and asked the school secretary, Jane Vickers to call teacher, Bobby Wilson, in his classroom and verify Johnson's absence. When Johnson was confirmed not at school, I printed color pictures of Johnson. At that time, the principal's secretary, Arabi Hall, notified me that there was a mother that wanted to meet with me in reference to her son missing. I proceeded to the principal's office where I met Jackie and her daughter, Kenyetta Johnson. They both verbally stated that he has no girlfriends and that he does not particularly hang around any sole person. Kenyetta verbally stated that his closest companion was                    . After discovering that              had been suspended, I asked dispatch to send the zone 4 unit, Deputy McCarmy, to contact.             at his residence. After Jackie proceeded to the guidance counselor's office, McCarthy informed me that he made contact with .           and that he stated he has not seen or heard from Johnson since school.

On January 11, 2013 at 10:32 am, I was dispatched to the old gym for a code blue. At 10:35 am, I and Deputy Kerry Quinn arrived. I observed students running out of the gym and overheard them saying "that was a dead body." As I approached the southwest corner of the gym, I detected a mild odor of a corpse. The complainant, Phillip Pieplow, was bent over north of the body and verbally said "I don't think anybody can help him." I and Quinn proceeded to the corner and I observed a blue cheerleader mat lying horizontal and rolled up to approximately a 3' diameter. In the center of the roll pointing north, I observed two feet with socks wearing denim jeans. We had to move three mats to get to the other end of that cheerleader mat. In the center of the roll facing south, I observed a black male torso and head wearing white, exposed down to his rib cage. Both arms partially obstructed the face and were moderately stiff. The facial area was severely disfigured and swollen. The only identifying feature to the victim that I observed was the long dread locks.

Soon after, three firefighters arrived on scene and began tending to the body. Not far behind, two paramedics arrived on scene and one verbally stated "rigor has already set in." At 10:43 am, I advised the dispatcher "109D" and asked for him to alert the detectives. I directed Quinn to establish a crime scene log while I monitored the two entrances. Soon after, the incident was turned over to Investigator Jack Winningham.

On January 12, 2013 at 9:00 pm, I sent the dispatcher a request to remove Kendrick Lamar Johnson from GCIC/NCIC as a missing person.

| Report Author | | Approved By |
|---|---|---|
| SO8103 - ADAMS, MICHAEL | | SO3108 - JONES, STRYDE |
| Report Date | | Approved Date |
| 1/13/2013 4:51:33 PM | | 1/14/2013 9:52:36 AM |

Printed: May 2, 2013 - 2:54 PM

*LCSO - K. Johns*

# Exhibit 4











# Exhibit 5



# VALDOSTA - LOWNDES
# REGIONAL CRIME LABORATORY

**1708 NORTH ASHLEY STREET**
**VALDOSTA, GEORGIA 31602**
**229-293-3120**

LABORATORY REPORT

**Frank Simons**
Chief of Police

**Chris Prine**
Sheriff

**Barry C. Funck**
Laboratory Director

January 25, 2013

| | | | |
|---|---|---|---|
| **To:** | Lowndes County Sheriff's Office<br>120 Prison Farm Road<br>Valdosta, Georgia 31601 | **Laboratory Case Number:**<br>**Submission Number:**<br>**Agency Case Number:** | 2013-00042<br>1<br>13-01-01520 |

**ATTN:** Investigator Jack Winningham

Subpoenas pertaining to this case should refer to the Valdosta - Lowndes Regional Crime Laboratory Case Number.

*James Thornton*

**Offense(s):** Death Investigation
**Subject(s):** Kendrick Lamar Johnson (Victim)

James D. Thornton

Criminalist

---

## Reference:

This report is in reference to a request for Crime Scene Forensic services made to the Valdosta - Lowndes Regional Crime Laboratory on January 11, 2013. This report may contain conclusions, opinions, and/or interpretations made by the author.

## Crime Scene Narrative:

On Friday, January 11, 2013 at approximately 1048 hours, I was contacted by Captain Wanda Edwards of the Criminal Investigations Division at the Lowndes County Sheriff's Office, in reference to a deceased student at Lowndes High School (LHS), 1606 Norman Drive, Valdosta, Georgia. I advised that I would be en route.

On Friday, January 11, 2013 at approximately 1108 hours, I arrived at Lowndes High School, 1606 Norman Drive, Valdosta, Georgia. I was briefed by Investigations Staff Sergeant Jack Winningham. Staff Sergeant Winningham advised that Lowndes County Sheriff's Investigators were dispatched by Lowndes County 911 Center to the Old Gymnasium at the Lowndes High School at 1606 Norman Drive, Valdosta, Georgia. I was advised that students at Lowndes High School were in the Old Gymnasium when they decided to climb up on to padded mats that were rolled-up and in the vertical position. I was advised that when the students climbed on top of the rolled-up mats they saw what appeared to be white in color socks. The students advised that they approached the socks to get a closer look, in which they discovered that it was a body. I was advised that the students notified a teacher, in which the teacher started pulling the vertical positioned mats down into the horizontal position to access the situation. When the teacher made their way to the rolled-up mats in the back row along the Old Gymnasium southwest wall they saw what appeared to be a deceased body.

Report Page 1 of 5

*LCSO - K. Johnson 160*

It was advised that the body was positioned head first inside of the rolled-up mat. EMS arrived on scene and the victim LHS student; Kendrick Lamar Johnson: black male, birth date 10/10/1995, of 920 Ponderosa Drive, V⌒sta, Georgia was slightly pulled out of the mat and found deceased.

The campus at this address contains multiple buildings located east of Norman Drive, Valdosta, Georgia. The constructed building is a public high school campus. The buildings on this campus are constructed with red in color brick on the exterior and a grey in color metal roof. The campus also contains multiple parking lots, white in color mobile trailers, multiple classrooms, multiple offices, multiple athletic fields, a football stadium, and multiple gymnasiums. The campus contains an Old Gymnasium Building where Johnson was found deceased. The Old Gymnasium is located north of the campus cafeteria. The Old Gymnasium contained bleachers along the north and south walls. There are multiple basketball goals around the hardwood floors. There were approximately twenty-one (21) rolled-up mats in the southwest corner of the gym.

The scene was established with crime scene tape and secured by the Lowndes County Sheriff's Office personnel. While on scene I noted the following Lowndes County Sheriff's Office personnel: Captain Wanda Edwards, Lieutenant Stryde Jones, Sergeant Aaron Pritchett, Staff Sergeant Jack Winningham, Major Logan Henderson, Deputy Randy Lightsey, Deputy Mike Adams, Deputy John Marion, and Investigator Jack Priddy. Personnel on scene from the Valdosta-Lowndes Regional Crime Laboratory (VLRCL): Criminalist Lieutenant Shannon Salters, and Criminalist Ray McGraw. Personnel on scene from the Georgia Bureau of Investigations (GBI): Crime Scene Specialist Wes Horne, Agent Kristen Perry, Agent Lindsay Marchant, Agent Mike Callahan, Agent Amy Braswell, and Agent Steve Turner.

On Friday, January 11, 2013 at approximately 1125 hours, an initial walk-through of the exterior and interior of the scene was conducted by Staff Sergeant Winningham and myself. Nitrile gloves were worn by all crime scene personnel entering the scene throughout the investigation. A cursory inspection of the east side (front of Cafeteria and Old Gymnasium building) entry/exit doors and windows was conducted, in which it appeared to be no sign of forced entry.

I started processing the scene by taking overall photographs of LHS Main Entrance. With the assistance of Criminalist McGraw and Criminalist Lieutenant Salters a three-dimensional (3-D) image of the interior scene was created using the Leica C-10 Scanning System.

Upon completion of the Leica Scan Documentation, the GBI personnel entered the scene for an initial walk-through and to assist with the investigation.

I photographed the crime scene, taking overall and mid-range photographs of the campus exterior Cafeteria and Old Gymnasium. The exterior and interior of the scene was video recorded with a digital camcorder.

A cursory search of the exterior west wing (rear side of Cafeteria and Old Gymnasium) was conducted by GBI Crime Scene Specialist Wes Horne and myself. All interior and exterior trash cans in the area were searched. The entry/exit doors to the rear (west side of building) of the Old Gymnasium were locked. There appeared to be no signs of forced entry to the rear (west side of building) entry/exit doors. It was noted that on the south side of the exterior cafeteria building a window was ajar. It appeared that the window was unlocked and opened with no sign f force entry. Windows and entry/exit doors were documented with photographs.

Report Page 2 of 5                    LCSO - K. Johnson  161

VLRCL Case Number: 2013-00042                    Agency Case Number: 13-01-01520

The interior of the Old Gymnasium was documented, taking overall and mid-range photographs. During a cursory search areas of concern were identified. The evidentiary items were identified using Yellow Identification Numbers. I observed one (1) black and white Adidas shoe on the floor in front of a rolled-up mat lying horizontally in the southwest corner of the Old Gymnasium (Crime Scene Item # 1). I observed one (1) yellow two pocket folder on the gym floor in front of a rolled-up mat near the west wall of the Old Gymnasium (Crime Scene Item # 2). I observed one (1) blue in color Physical Science Book on the floor behind two rolled-up mats near the southwest wall entry/exit door (Crime Scene Item # 3). I observed one (1) grey Hollister pull-over hooded sweater on the concrete floor around multiple horizontal and vertical rolled-up mats in the southwest corner of the Old Gymnasium (Crime Scene Item # 4). I noted a rolled-up mat containing Johnson's deceased body lying in the horizontal position on the concrete floor in the southwest corner of the Old Gymnasium (Crime Scene Item #5). There were what appeared to be bloodstains on the south wall of the Old Gymnasium. A blood presumptive test was performed on the stains by GBI Crime Scene Specialist Horne, which according to the manufactures instructions the stains were positive for blood (Crime Scene Item # 6).

It was noted that a pair of black, grey, and orange in color NIKE shoes were observed near the bleachers on the north wall of the Old Gymnasium. It appeared that the shoes had stains that looked similar to blood. A blood presumptive test was performed on the stains by GBI Crime Scene Specialist Horne, which according to the manufactures instructions the stains were negative for blood.

Mid-range and close-up photographs, with and without, a scale were taken of the items that were identified with the Yellow Identification Numbers. A rough sketch of the scene was generated. Additional documentation of the items was conducted. Crime scene Item # 1 is a men's size U.S. 9.5 shoe according to the inside tag. Crime Scene Item # 2 contained school documents belonging to Kendrick L. Johnson (deceased victim). The documents were photographed. Crime scene Item # 4 is a size M (medium) according to its tag. Two swabs of the blood stains on the south wall were collected (Crime Scene Item # 6).

With the assistance of Criminalist McGraw and GBI Crime Scene Specialist Horne approximate points of measurements were taken using the triangulation method from two fixed objects to the marked items of evidence. Point A is the Old Gymnasium west wall north entry/exit double door frame. Point B is a corner sticking out on the west wall. The items of evidence were collected and secured in my crime scene vehicle. My vehicle was locked and I maintained the keys.

On Friday, January 11, 2013 at approximately 1600 hours, The Lowndes County Corner Bill Watson arrived on scene to conduct his examination of Johnson. Johnson's body was positioned lying approximately on his left side sticking out of the rolled-up mat from his head to approximately his abdominal area. The remainder of his body from approximately the abdominal area to his feet was inside the rolled-up mat. Johnson's head was on the concrete floor in a pool of blood. Johnson's body was removed from the mat so Lowndes County Corner Bill Watson could continue his examination. Johnson was wearing a white in color undershirt, an orange in color tee shirt, a white in color tee shirt, a belt, blue in color jeans, black in color shorts, boxer underwear, and white in color socks. There was one (1) pair of white, grey, and orange in color NIKE shoes inside of the mat (Crime Scene Item # 8), which were not on his feet. The NIKE shoes were documented with photographs. Johnson's body was placed into the supine position so that his body could be examined by Lowndes County Corner Bill Watson. During his examination Lowndes County Corner Bill Watson unfastened Johnson's belt and jeans. Johnson's body was documented with additional photographs.

VLRCL Case Number: 2013-00042                    Agency Case Number: 13-01-01520

On Friday, January 11, 2013 at approximately 1610 hours, GBI Crime Scene Specialist Horne and I placed Johnson's body on a sterile white sheet to conduct an additional cursory examination for documentation. It appeared that rigor and livor mortis had already set in, which was consistent with the position of the way the body was found. Johnson's right arm was in a position that appeared to cover his face and his left arm was along his body with his forearm bent back towards his head. Johnson's fingers were loosely curled up on both hands. One black wire with white earphones was hooked around Johnson's left hand middle and index finger. There appeared that rigor mortis had set in because of the stiffening of his body. Levity was present on his head, arms, and chest area. Johnson's face was swollen and had blood exiting from his eyes, nose, and mouth. There was visible dried blood on Johnson's arms, chest, and face. The smell of Johnson's body appeared that it was starting to decompose. Johnson's eyes were swollen, fixed, and dilated. Blood was visible in the eyes with signs of petechia. There appeared to be no signs of blunt force trauma on Johnson's face or body. There appeared to be no visible signs of wounds to Johnson's body. There were visible signs of skin slippage on Johnson's abdomen area, face, and arm. Johnson's body was documented with additional detailed photographs.

During the removal of Johnson's body from the rolled-up mat, additional items were observed that appear to have evidentiary value. One (1) black and white Adidas shoe was located in the southwest area of the Old Gymnasium on the concrete floor near Johnson's head in the pool of blood (Crime Scene Item # 7). The Adidas shoe was a size U.S. 9.5, which appeared to be similar to Crime Scene Item # 1. Johnson's pockets were searched, in which, one (1) LG cell phone was located from his left front blue jeans pocket (Crime Scene Item #9). Approximate points of measurements were taken using the triangulation method from the two previous fixed objects to the additional items of evidence. The items of evidence were photographed, collected and secured in my crime scene vehicle. My vehicle was locked and I maintained the keys.

Approximate measurements of the rolled-up mat Johnson was found in were obtained: length was approximately 74 inches and the width of the entire diameter was approximately 34 inches. The foot end (side where Johnson's feet were) of the rolled-up mat was approximately $14^{1/2}$ inches in diameter at the opening of its widest point. The head end (side where Johnson's head was) of the rolled-up mat was approximately $14^{3/4}$ inches in diameter at the opening of its widest point.

During a cursory search of the Old Gymnasium Girls Restroom, paper towels that appeared to contain blood were observed in the trash can near the sinks (Crime Scene Item # 10). The paper towels were documented with photographs, collected, and secured in my crime scene vehicle. My vehicle was locked and I maintained the keys.

Steve Owens from Owens Transport was contacted by Lowndes County Corner Bill Watson to conduct the removal and transport of the body to the Valdosta-Lowndes Regional Crime Laboratory.

Investigator Winningham, Captain Edwards, Lieutenant Jones, Criminalist McGraw, Criminalist Lieutenant Salters, and I conducted a final walk through of the crime scene, in which nothing additional was noted. At approximately 1720 hours, I concluded my investigation and released the scene to Investigator Staff Sergeant Winningham and the Lowndes County Sheriff's Office.

On Friday, January 11, 2013 at approximately 1730 hours, Owens Transport and I arrived at the Valdosta-Lowndes Regional Crime Laboratory with Johnson's body and placed him in Body Cooler # 2. A Lowndes County Sheriff's Office Property and Evidence Form were generated for the body item # 5, which contained the chain of custody.

Report Page 4 of 5                    LCSO - K. Johnson  163

VLRCL Case Number: 2013-00042                          Agency Case Number: 13-01-01520

The evidence from the scene was placed into the Crime Scene Vehicle Bay Temporary Evidence Locker and I maintained the keys. Crime Scene Item #'s 7, 8, and 10 were saturated in blood so they were placed into drying cabinet # 1 and I maintained the keys.

On Sunday, January 13, 2013, I returned to the Valdosta-Lowndes Regional Crime Laboratory (VLRCL) to retrieve the evidence from the locker and drying cabinet. All items of evidence were sealed with evidence tape. The digital images of the scene were converted onto a DVD to be submitted as Crime Scene # 11 for evidence. The digital video recording of the scene was converted onto a DVD to be submitted as Crime Scene # 12. Twelve (12) Lowndes County Sheriff's Office Property and Evidence Forms were generated for the evidence, which contained the chain of custody.

On Sunday, January 13, 2013, I arrived at the Lowndes County Sheriff's Office located on 120 Prison Farm Road, Valdosta, Georgia, and submitted the evidence to the LCSO Evidence Locker and I secured the evidence.

On Sunday, January 13, 2013, I was asked by Lowndes County Sheriff Chris Prine if it was possible to allow Johnson's father Kendrick Johnson Sr. to make a positive identification of his son. Johnson's parents were escorted to the Valdosta-Lowndes Regional Crime Laboratory by Lieutenant Jones, and Investigator Staff Sergeant Winningham. Kendrick Johnson Sr., Lieutenant Jones, and Investigator Staff Sergeant Winningham entered the lab and were escorted by myself to the body cooler room where the positive identification was made.

On Monday, January 14, 2013, Johnson's body was released to Steve Owens for transport to the GBI for autopsy.

**Remarks:**

Questions regarding this report should be addressed to: James D. Thornton at jthornton@lowndescounty.com

Report Page 5 of 5

LCSO - K. Johnson 164

# Exhibit 6

Case id: **2013-4000101**

ON FRIDAY, 01/11/13, AT APPROXIMATELY 1730 HOURS, DEATH INVESTIGATION SPECIALIST GERARDO MORALES LIC. # 901615 WAS CONTACTED BY BILL WATSON OF THE LOWNDES CO. CORONER'S OFFICE (229) 560-1685 REGARDING THE DEATH OF KENDRICK JOHNSON. THE DECEDENT IS DESCRIBED AS A 17-YEAR-OLD AFRICAN-AMERICAN MALE. THE CORONER PROVIDED AND INVESTIGATOR MIKE CALLAHAN OF THE LOWNDES CO SO REPORTED THE FOLLOWING INFORMATION SURROUNDING THE DEATH:

THE DECEDENT WAS DISCOVERED UNRESPONSIVE INSIDE A ROLLED GYM MATTRESS IN HIS SCHOOL GYM BY SEVERAL OTHER STUDENTS.

THOUGH THE INCIDENT WAS UNWITNESSED, AUTHORITIES BELIEVE THE DECEDENT DROPPED HIS SHOES INSIDE A ROLLED MAT THAT WAS PROPPED AGAINST THE WALL AND ATTEMPTED TO RETRIEVE THEM BY REACHING INTO THE MAT. SEVERAL MATS WERE AGAINST THE WALL, EACH STANDING SEVEN FEET IN HEIGHT.

AT THE TIME OF THIS REPORT, IT WAS UNKNOWN IF THE DECEDENT WAS ALONE IN THE GYM, AND IF HE HAD ANY MEDICAL CONDITIONS OR TAKING ANY MEDICATIONS.

AN EXAMINATION OF THE DECEDENT BY THE LOCAL AUTHORITIES DID NOT REVEAL THE PRESENCE OF ANY EXTERNAL TRAUMA.

THE SCENE DID NOT REVEAL ANY SIGNS OF FOUL PLAY AND NO FOUL PLAY IS SUSPECTED AT THIS TIME. NO SIGNS OF ANY ILLICIT DRUGS AND/OR ALCOHOL WERE PRESENT AT THE SCENE.

DIS GERARDO MORALES

1/14/2013

THE PRELIMINARY FINDINGS WERE RELAYED TO LOCAL AUTHORITIES. SCENE PHOTOS AND A TIME LINE WAS REQUESTED BY DR KRAFT. EVIDENCE WAS TURNED INTO THE LAB.

R.D.BRYAN

1/16/2013----1010 hrs

LT JONES OF THE LOWNDES CO S.O. WAS CONTACTED ABOUT THIS CASE. THE DECEDENT WAS SEEN ON THE SCHOOL VIDEO GOING INTO THE GYM AROUND 1300 HRS ALONE. THE VIDEO DID NOT SHOW ANY OTHER CHILDREN OR STAFF IN THE GYM WITH THE DECEDENT AT THAT TIME. THE DECEDENT WAS REPORTED MISSING BY HIS PARENTS AFTER MIDNIGHT ON 1/10/2013 WHEN HE DID NOT RETURN HOME. THERE WAS A BACK DOOR TO THE GYM BUT SCHOOL OFFICIALS STATED IT STAYED LOCKED; IN ADDITION, A VIDEO FOOTAGE OF THAT AREA INDICATED NO ONE CAME IN OR OUT OF THE DOOR.

LT JONES STATED THE DECEDENT'S SHOES WHICH HE WAS WEARING AT THE TIME OF THE DEMISE WERE LOCATED INSIDE THE MAT WITH THE BODY.

R.D.BRYAN

CASE ADMINISTRATIVELY REVIEWED. BML, 01/23/13

# Exhibit 7

# Official Report



**Division of Forensic Sciences**
**Georgia Bureau of Investigation**
**State of Georgia**

George Herrin, Jr., Ph.D.
Deputy Director

\* NAME Accredited \*

**Central Regional Lab**
DOFS Case #:    2013-4000101
Report Date:    05/02/2013



**Requested Service:** Autopsy
    Agency:         Lowndes Co. Coroner
    Agency Ref#:
    Requested by:   B. Watson

**Case Individuals:**
    Victim (Juv.): KENDRICK JOHNSON

**Evidence:**
    2013-4000101-001        Decedent

**Results and Conclusions:**
    Evidence Submission: 001

In accordance with the Georgia Death Investigation Act, an autopsy is performed on the body of Kendrick Johnson at the Georgia Bureau of Investigation, Central Regional Medical Examiner's Office on 01/14/13. The autopsy is begun at 0940 and the prosector is Dr. Maryanne Gaffney-Kraft.

Cause of Death:
Positional asphyxia

Pathologic Diagnoses:
Well-developed and well-nourished black teenage male
Congestive-decomposition changes of the head, neck, torso and upper extremities
No significant injuries identified

Presentation of Body:
The body is received in a body bag lying on and partially wrapped in a white sheet; the portion of the sheet corresponding to the upper body shows varying amounts of decomposition fluid soiling predominantly centered on the head. The body shows congestive-decomposition changes of the head, neck, torso and bilateral upper extremities; purge fluid drains from the nose and mouth. Body identification consists of identification tags on the right foot and body bag. The body is clothed in white socks, denim jeans which are unbuttoned and unzipped, a white with dark-color striped cloth/material belt with a white metal buckle which is unbuckled, black sports shorts, blue-tone boxer underwear, a white T-shirt, a yellow-orange sleeveless T-shirt and a white sleeveless tank top; the front pockets of the jeans are partially pulled out; the clothing shows varying amounts of decomposition fluid/purge soiling predominantly involving the shirts; no obvious foreign body material or acute damage is present. Accompanying the body, lying on and across the upper chest, is a set of white with black wire earphones/buds; one of the attaching wires is broken; a wadded 'Starburst' wrapper is stuck to the posterior left proximal forearm/elbow. Accompanying the body, within one of the pockets of the jeans, are three tan/brown rubber band-like hair ties; numerous pieces of adhered black hair are present. There is no evidence of medical intervention.

External Examination:
Body Condition: Intact with decomposition
Length: 70 inches
Weight: 160 pounds

Body Heat:  Room temperature
Rigor:  Absent
Livor:  Upper body:  head, neck, upper torso and extremities
Hair:  Black in dreadlocks
Eyes:  Brownish with congestive-decomposition changes
Teeth:  Natural in good condition
Facial Hair:  Thin, black chin hair
Fingernails:  Intact, trimmed and worn short; no obvious foreign body material present

The body is that of a well-developed and well-nourished black teenage male appearing compatible with the reported age.  Congestive-decomposition changes are manifested by variable bloating, red-green-black skin discoloration with and without marbling, vesicle formation and skin slippage of the head, neck, torso and upper extremities; the changes increase in degree inferior to superior.  Early hair slippage, purge and a foul odor are also present.  The head is normally formed and the nose and ears are not unusual; the left ear shows a bent-lobe position-artifact.  The lips, gums and oral cavity are without obvious focal lesions.  The neck is without masses and the larynx is in the midline.  The chest and back are well developed and symmetrical.  The abdomen is bloated; no obvious fluid collection is present.  The external genitalia are that of a normal teenage male.  The testes are descended within the scrotum and the penis is unremarkable; patchy scrotal drying is present.  The anus and perineum are without focal lesions.  The upper and lower extremities are well developed and symmetrical without absence of digits.  Identifying marks and scars consist of a hypopigmented curvilinear scar of the right superior-medial knee and a hypopigmented patch of the right anterior-lateral distal thigh.

Evidence of Injury:
Blunt Force Injury:
On the right posterior-medial wrist there is a 1/8 x 1/8 inch superficial abrasion.  On the left distal 4th finger, involving the dorsal skin just proximal to the cuticle, there are two superficial abrasions measuring 1/8 x <1/8 inch and 3/16 x <1/8 inch.

On the left distal 4th finger, involving the dorsal skin overlying the distal interphalangeal joint, there is a 5/16 inch superficial tear with no associated hemorrhage.

No other injuries are identified.

Additional Procedures:
Photographs:  Documentary photographs are obtained.
Radiographs:  A postmortem head x-ray is performed at autopsy and is negative for bony abnormalities/fractures or radio-opaque weaponry.

Evidence Collected:
The bloodstain card is collected as evidence.  Postmortem urine and liver are obtained at autopsy; blood and vitreous could not be obtained.

Personal Effects Disposition:
The clothing, set of earphones/buds and hair ties (3) are released with the body.

Internal Examination:
Body Cavities:
A Y-shaped thoraco-abdominal incision is made and the organs are examined in-situ and eviscerated in the usual fashion.  The bilateral pleural and peritoneal cavities contain no significant fluid.  No significant adhesions are present.  All body organs are present and in their normal anatomical positions; variable congestive-decomposition changes are present and increase in degree inferior to superior; intravascular blood is not present.

Cardiovascular System:
The pericardial sac is free of significant fluid and adhesions. The heart weighs 260 grams and is structurally normal. The epicardium is smooth and glistening with mild to moderate amounts of epicardial adipose tissue. The coronary arteries arise normally, follow the usual distribution and are widely patent without evidence of abnormality or significant atherosclerosis. The chambers and valves bear the usual size-position relationships and are unremarkable. The myocardium is uniform and shows no evidence of acute infarction, scarring, or focal lesion. The aorta and its major branches arise normally, follow the usual distribution and are without significant atherosclerosis.

Neck:
A layered dissection of the anterior neck is performed. Examination of the soft tissues of the neck including the strap muscles and large vessels reveals no abnormalities. The hyoid bone and laryngeal cartilages are intact. The larynx is clear. The lingual mucosa is intact; the underlying musculature is devoid of hemorrhage.

Respiratory System:
The right and left lungs weigh 260 and 240 grams respectively. The upper and lower airways are free of debris and foreign material; the surface mucosa is without focal lesion. The pleural surfaces are smooth. The lungs are normally formed. The parenchyma of both lungs is without obvious consolidation or focal lesions. The pulmonary arteries are free of thrombi or emboli.

Gastrointestinal Tract:
The GI tract shows normal configuration and is intact throughout its length. The esophageal mucosa is without focal lesions. The stomach contains a minimal amount of partially-digested, unrecognizable food; the mucosa is without focal lesions. The small and large bowels are unremarkable and contain progressively formed stool. The appendix is present.

Hepatobiliary System:
The liver weighs 860 grams. The capsule is intact and the parenchyma is uniform without focal lesions. The gallbladder contains a moderate amount of bile; the mucosa is unremarkable. The extrahepatic biliary tree is patent.

Genitourinary System:
The right and left kidneys are of normal size and shape weighing 90 and 100 grams respectively. The capsules strip with ease from the underlying smooth cortical surfaces. The renal architecture is intact and is without focal lesions. The cortices are of normal thickness and the cortical-medullary junctions are sharp. The ureters are intact and unremarkable. The bladder contains a moderate amount of yellow clear urine; the mucosa is unremarkable. The prostate, seminal vesicles and testes are unremarkable without focal lesions.

Endocrine System:
The thyroid and bilateral adrenal glands are unremarkable without focal lesions. The pancreas is of normal size and shape without focal lesions.

Immunologic System:
The spleen weighs 90 grams. The capsule is intact and the parenchyma is congested but without obvious focal lesions. The thymus is of normal size and shape for age without focal lesions. No significant lymphadenopathy is identified.

Central Nervous System:
The dura mater is intact and is unremarkable without focal lesions. The leptomeninges are thin and delicate without evidence of purulent infection. The vasculature at the base of the brain is normally formed and is intact without evidence of abnormality or significant atherosclerosis. The brain weighs 1280 grams. The cerebral hemispheres are symmetrical and show a normal gyral pattern. Mild generalized edema is present without evidence of herniation. Coronal sections reveal normal architecture of the cortical gray matter, subcortical white matter, basal ganglia and thalami; no focal lesions or hemorrhages are present. The ventricular system is

symmetrical and not dilated. The brainstem and cerebellum are unremarkable.

Musculoskeletal System:
The bony framework and supporting musculature/soft tissues are well developed and without obvious focal lesions. The musculature/soft tissues of the head, neck, torso and upper extremities show variable congestive-decomposition changes, which increase in degree inferior to superior; bilateral vertical incisions of the back are made for examination. A posterior neck dissection is performed at autopsy and is negative for injuries/abnormalities.

Microscopic Examination:
Sections of heart, lung, thymus, liver, spleen, pancreas, kidney, adrenal gland and brain are examined and show autolysis-decomposition changes; no obvious pathology is identified.

Summary and Interpretation:
The decedent is a 17-year-old black teenage male who was found deceased, upside-down in the central-hole of a rolled-up gym mat, which was stored standing-on-end in a vertical position in the gym of his high school. Per investigative reports, the decedent was seen via video cameras entering the gym alone on the afternoon of 01/10/13; the decedent was reported missing by his family the night/early morning of 01/10/13-01/11/13; the decedent was found the morning of 01/11/13 by students walking on top of the rolled-up mats. Law enforcement investigative findings, crime scene investigator findings/report, coroner's findings, witness statements and scene photographs are received, reviewed and discussed.

The finding at autopsy is a well-developed and well-nourished black teenage male with congestive-decomposition changes of the head, neck, torso and upper extremities. No significant natural disease process or injuries are identified.

Analysis of postmortem liver for drug screen testing is negative for cocaine/cocaine metabolites and common opioids. Analysis of postmortem liver for drug confirmation testing is negative for a comprehensive drug screen.

Given the complete autopsy including toxicology and histology, the scene photographs, the scene forensic testing, the law enforcement investigative findings including crime scene investigator report and witness statements, and the coroner's findings, it is my opinion the cause of death in this case is positional asphyxia and the manner of death is accident.

---

Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) and fire debris extracts will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.

Technical notes and data supporting the conclusions and findings in this report are maintained within the laboratory case records.

This case may contain evidence that must be preserved in accordance with O.C.G.A. § 17-5-56.

Maryanne Gaffney-Kraft
Regional Medical Examiner

Related Agencies:

**Division of Forensic Sciences** Case 1:26-cv-01212-SDG   Document 8   Filed 03/23/26   Page 86 of 123  **Continued**
**Georgia Bureau of Investigation**

2013-4000101: Autopsy

Southern Judicial Circuit
Child Abuse Protocol Committee-Lowndes Co.
Child Fatality Review Board
GBI-Medical Examiner Central                    ACN: DR GAFFNEY-KRAFT
Lowndes Co. District Attorney
Lowndes Co. Sheriff's Office                    ACN: 130101520

## End of Official Report

# Exhibit 8





# Exhibit 9







# Exhibit 10

Kendrick Appearance Change Progression - January 10 - 13, 2013

Upon arrival at school



Found in Lowndes County HS gym



State medical examination



Upon arrival at funeral home



# Exhibit 11

# HAROLD L. LEE INVESTIGATIONS

P.O. Box 23013 Jacksonville, Florida 32241
Direct Telephone (904) 699-4768
Fax (904) 731-0012

LIC ☐                                                          LIC ☐          b6
                                                                              b7

Date:   February 21, 2013

To:   ☐
       510 West Broad Avenue, Suite C
       Albany, Georgia 31701

From:  ☐

Re:   Kendrick Johnson (Deceased)

☐

☐ stated that on the 11ᵗʰ of January 2013 he was on the telephone with a GBI agent when the agent asked him what was going on at the county high school. ☐ had no idea what was happening at the high school. Around 3:30 P.M., that afternoon ☐ received a telephone call from the Lowndes County Sheriff's Office regarding a death at the Lowndes County High School. When he arrived at the school he was directed to the old gymnasium. The gym was where the body was located rolled in a mat lying on the floor. There were several officers from the Lowndes County Sheriff's Office and the Valdosta Police Department present. Numerous individuals were going in and out of the building that was not law enforcement. An investigator for the Sheriff's Office told him that the boy in the mat had fallen into the mat attempting to retrieve his shoes. ☐ notice that the arms on the body were not stretched above the head but was down by the side of the body. The entire body was in the mat.

☐ told the investigator that he was going to have the body taken to the lab in Macon, Georgia for an autopsy and that the body would be stored at a local funeral home inside a cooler until Monday. The investigator told ☐ that an autopsy was not needed because the death was an accident. The investigator also told ☐ that the body should be taken to the city Morgue. A detective with the Valdosta Police Department got permission for the body to be stored at their facility. On Monday ☐ had the body transported to the lab in Macon. ☐ believes that the body was placed inside the mat. He had the body taken to the lab for an autopsy because he needs a cause of death before he can sign a certificate of death.

☐          b6
           b7

# Exhibit 12



**ELLIOTT
BLACKBURN**

ATTORNEYS AT LAW

November 9, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re:  Open Records Act request

Dear Mr. Johnson:

This is to respond to your November 7, 2023 request to Lowndes County Sheriff's Office under the Georgia Open Records Act for records regarding Kendrick Johnson.  Your request was received on November 8, 2023.

**Please be advised that Open Records Act requests by civil litigants for records that are sought as part of or for use in any ongoing civil litigation against an agency shall be made in writing and copied to counsel of record for that agency contemporaneously with their submission to that agency.  See OCGA §50-18-71(e).  Therefore, your ongoing civil litigation against the Sheriff's Office requires that you copy me with any Open Records Act requests submitted to the Sheriff's Office.  Please govern yourself accordingly.**

The EMT report you requested was previously provided to you, through counsel, in May 2013. Regardless, I provided a courtesy copy of the report for your convenience and at no cost to you under cover of letter dated November 4, 2023.  The copy we sent to you was a duplicate of the report we have on file and is legible.  We have enclosed an additional copy of the report and it is likewise legible.

Sincerely,

s/Jim Elliott
James L. Elliott

cc:   mary@elliottblackburn.com
      sorecords@lowndescounty.com

3016 North Patterson Street | Valdosta, GA 31602
(229) 242-3333 | contact@elliottblackburn.com



13011520

Peace Officer Signature

**Transfer of Patient Custody to Law Enforcement**

I, a Peace Officer, have taken the above named person into my custody. I hereby take responsibility for personal effects and care of above named person.

√ I Agree          I Disagree          Not Applicable

**Witness**

I acknowledge that I have witnessed the patient/guardian sign this Patient Care Report.

I Agree          I Disagree          √ Not Applicable

Signature

Printed Name   Quinn, Kenny LCSO                          Date  01/11/2013

Technician

**Technician**

I acknowledge that I have provided the above assessments/treatments for this patient.

√ I Agree          I Disagree          Not Applicable

**Ambulance Crew Member Statement**

My signature below indicates that, at the time of service, the patient was physically or mentally incapable of signing, and that none of the authorized representatives were available or willing to sign on the patient's behalf.

√ I Agree          I Disagree          Not Applicable

Signature

Printed Name   NICHOLAS TOMLINSON                         Date  01/11/2013

Reason Pt. Unable to Sign   deceased

Valuables

Valuables Not Applicable

Inc. Date: 01/11/2013     Patient Name: Johnson, Kendrick L.     South Georgia Medical Center Mobile Healthcare Service
Incident #: 300190        Account #:

Page: 3
Date Printed: 05/01/2013 08:15

LCSO - KJ - Unredacted 401

CS CamScanner

13011520

| 10:42 | 0/0 | 0 | | 0 Absent | | | | 3 | | | X | 4 | 0 | | |

**Glasgow Coma Score**

| Date/Time | Glasgow Eye Opening | Glasgow Verbal | Glasgow Motor | Glasgow Coma Score |
|---|---|---|---|---|
| 10:42 | 1 | 1 | 1 | 3 |

**Past Medical History**

| MEDICATION ALLERGIES | Generic Name | Description |
|---|---|---|
| Unable to Obtain Allergies | Unable to Obtain Allergies | |

| Environmental/Food Allergies | | Description |
|---|---|---|
| Not Known | | |

| Patient Medications | Generic Name | Dosage |
|---|---|---|
| Unable to Obtain Patient Medications | Unable to Obtain Patient Medications | |

Medical Surgery History
Unable to Obtain PMH

History Primarily Obtained From　Pregnancy　Advanced Directives　　　　Practitioner Name
　　　　　　　　　　　　　　　　　Not Applicable

**Procedures and Treatments**

| Time | Crew Name | Location | Size of Equipment | Attempts | Response | Success | Comments |
|---|---|---|---|---|---|---|---|

**Medication Administered**

| Time | Crew | Medication | Route | Dosage | Response | PTA | Comments |
|---|---|---|---|---|---|---|---|

**ECG Monitor**

| Time | ECG Type | ECG Lead | ECG Interpretation | | ECG Ectopy | Cause For Change |
|---|---|---|---|---|---|---|

**Assessment Exam**

Time of Assessment: 2013-01-11T16:48:00-05:00

Abdomen-left-lower:
Abdomen-left-upper:
Abdomen-right-lower:
Abdomen-right-upper:
Back-cervical:
Back-lumbar:
Back-thoracic:
Chest: Absent Lung Sounds-Right Side, Absent Lung Sounds-Left Side
Ext-left-low:
Ext-left-up:
Ext-right-low:
Ext-right-up:
Eyes-left:
Eyes-right:
GU:
Head:
Heart: Not Available
Mental: Unresponsive
Neck:
Neuro:
Skin: Cold, Uvidity, Mottled




CamScanner

13011520

## Patient Care Report

South Georgia Medical Center
Mobile Healthcare Service
400 Woodrow Wilson Drive
Valdosta, GA 31602

Incident Date: 01/11/2011                Account #:                Patient Care #: 001
                                                                    Life Threat: Trauma



**Patient Information**

Name: Johnson, Kendrick L.          Age: 17 Years          D.O.B.: 10/10/1995 (mm/dd/yyyy)
                                    Gender: Male           SSN: 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
Address: 916 E. Brookwood Dr        Weight: KG / LB        Race: Black or African American
Valdosta, Lowndes, GA 31601         Phone:                 Ethnicity:

**Call Type and Location**       **Call Disposition**              **Response Times and Mileage**

Call Type: Cardiac Arrest        Disposition: Dead at Scene        1st Resp. Arr.:
Resp. Mode: Lights and Siren     Resp. Model Not Applicable        PSAP: 10:32          Incident #: 300390
Urgency: Immediate               Destination: REFUSED EMS          Disp. Notified: 10:32
Response: 911 Response               TRANSPORT,                    Unit Disp.: 10:33
Location: Public building (school,   Valdosta, GA 31603            Enroute: 10:33      Start Miles: 677.1
gov, office)                     Dest. Determ.: Not Applicable     At Scene: 10:40     Scene Miles: 981.6     To Scene: 4.5
Address: 1602 Norman Dr          Diverted From:                    At Patient: 10:42
Lowndes High School              Response Delay: None              Depart:
Valdosta, Lowndes, GA            Scene Delay: None                 Arrive Dest:        Dest. Miles: 681.6     To Dest: 0.0
31601                                                              In Service: 11:01
Zone:                                                              In Quarters:        End Miles: 681.6       To End: 0.0
                                                                   Cancelled:

                                                                   Call Sign: SQUAD 2
                                                                   Veh. #: 5995 92-H2
                                                                   Veh. Type: Ambulance
                                                                   Primary Role: ALS Ground Transport

First Responder Agencies: Valdosta Fire Department

**Unit Personnel**

Crew Member                      Crew Member Level                 Crew Member Role
TOM, PARON, NICHOLAS             EMT-Paramedic                     Primary Patient Caregiver
COKE, MARY JO                    EMT-Intermediate                  Secondary Patient Caregiver

**Call Information**

Destination Name: REFUSED EMS TRANSPORT          Response Request: 911 Response (Scene)
Destination Type: Not Transported                Response Disposition: Dead at Scene
Destination Determination: Not Available         Lights Siren To Scene: Lights and Siren
Vehicle Type: Ambulance                          Lights Siren From Scene: Not Applicable

Factors Affecting Response:
None

**Patient Condition**

Provider Impression: Cardiac Arrest
Chief Complaint: Cardiac Arrest
Onset Date/Time: 01/11/2011 at 10:30
Alcohol/Drug Use:
Injury Intent: Not Known
Cause of Injury:
Dispatch Reason: Cardiac Arrest

Primary Symptom
Cardiac Arrest
Other Associated Symptoms

**Patient Vitals**

Time | A/V | Pulse Rhythm | Resp. | Effort | SpO2 | SpO2 Qual. | ETCO2 | GCS | Pain | Stroke Scl | PTA | B.G. | RTS | Limb | Patient Position

Inc. Date: 01/11/2011          Patient Name: Johnson, Kendrick L.          South Georgia Medical Center Mobile          Page: 1
Incident #: 300390                Account #:                                Healthcare Service
                                                                           Date Printed: 05/01/2013 08:20

*LCSO - KJ - Unredacted 397*



# Exhibit 13

**44A-AT-3888194 Serial 31**

FD-302 (Rev. 5-8-10)

- 1 of 2 -

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    01/02/2014

On December 12, 2013, [ ]                                                        **b6**
[ ]                                                                              **b7C**
[ ]                                            was interviewed at the
HAHIRA MIDDLE SCHOOL, 101 South Nelson Street, Hahira, Georgia 31632. Also
present during the interview was [ ]
[ ]

After being advised of the identities of the interviewing agents and the
nature of the interview, [ ]        voluntarily provided the following
information:

[ ]                                                                    On
January 10, 2013, they were supposed to practice in the old gym at 5:00 pm.
The basketball teamed warmed up in the old gym approximately 30 minutes
before their game. [ ]      believed the wrestling team used the gym after
the basketball team. They had one mat in the center of the gym for
practice. The Color Guard initially practiced in the band room and then sat
in the hall waiting to get into the gym. At approximately 6:45 pm, the
Color Guard headed to the gym for practice. They put a tarp down to protect
the floor. They ran through their show two times and then left at
approximately 7:45 pm.

While they were sitting in the hall waiting to get into the gym,
[ ]        let an unknown, black male into the building. He went straight up
the ramp away from the gym. [ ]      described him as a very skinny, nerdy    **b6**
looking, black kid, with thick, dark rimmed glasses. [ ]      believed he      **b7C**
was in the ninth or tenth grade. According to [ ]      he was definitely
not KENDRICK JOHNSON.

During practice, [ ]              hit herself in the face and nose with a
rifle, which produced a lot of blood. She was on the far end of the gym,
near the basketball goal, and dripped a trail of blood from that end of the
gym to the girls' bathroom outside of the gym.

[ ]            normally video taped their practices, but on January 10, 2013,
they were using their telephones for music for the routine.

[ ]            indicated none of the girls were near the vertical mats in the

---

Investigation on    12/12/2013    at    Hahira, Georgia, United States (In Person)

File #    44A-AT-3888194

Date drafted    12/16/2013

by [ ]                                                                          **b6**
                                                                                **b7C**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

# Exhibit 14



# Exhibit 15

FILED
ELEVENTH CIRCUIT
JUDICIAL COUNCIL

SEP 2 4 2024

CIRCUIT EXECUTIVE

CONFIDENTIAL

Before the Judicial Council of the
## Eleventh Judicial Circuit

Judicial Complaint No. 11-24-90053

### ORDER

Before: WILSON, ROSENBAUM, and BRANCH, Circuit Judges; WALKER and BEAVERSTOCK, Chief District Judges.

Pursuant to 11th Cir. JCDR 18.3, this Judicial Council Review Panel has considered the materials described in JCDR 18(c)(2), including petitioner's complaint, the order of Chief United States Circuit Judge William H. Pryor Jr., and the petition for review filed by petitioner. No judge on this panel has requested that this matter be placed on the agenda of a meeting of the Judicial Council.

The Judicial Council Review Panel hereby AFFIRMS the disposition of this matter by Chief Judge Pryor. The petition for review is DENIED.

Done this 24th day of September, 2024.

FOR THE JUDICIAL COUNCIL:

United States Circuit Judge

# Exhibit 16

Kenneth Johnson
2800 Tyndall Drive
Valdosta, GA 31602

July 10, 2024

Ashlyn D. Beck
U.S. Court of Appeals, Eleventh Circuit
56 Forsyth St. N.W.
Atlanta, GA 30303

re:  Misconduct Petition  (complaint no. 11-24-90053)

Circuit Executives:

This Misconduct Petition should be granted for the following reasons:.

1. The June 7, 2024 dismissal Order of the judicial misconduct complaint against U.S. District Judge Leigh Martin May, did not mention, consider, or reconcile the basis of the complaint, that being that on or about May 6, 2024, I filed an affidavit of bias or prejudice against Judge May and according to the statute[1], "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

2. On May 31, 2024 Judge May retaliated against me for filing the judicial misconduct complaint against her and then for requesting the Eleventh Circuit to enforce the law in the petition for writ of mandamus filed on or about May 24, 2024.

3. The hostile nature of Judge May's prejudice is on full display in the Final Order when she resorts to inventing claims unsupported by the official record, the most blatant and easily refuted is the claim that we had "not alleged that these parties have any agreement or understanding with one another, especially not an agreement to violate Plaintiffs' rights."[2]

4. We allege and/or infer an agreement between the defendant's at least nine times in the complaint, explicitly stating an "agreement between the Defendants to violate a multitude of the Plaintiff's civil rights and federal and state criminal statutes." See Kenneth Johnson, et al v. GBI, et al case number: 1:23–cv–04218–LMM (Dkt. 43, ¶ 168), Appendix "B", p. 46

---

[1] See 28 U.S. Code § 144 -  https://www.law.cornell.edu/uscode/text/28/144

[2] See *Kenneth Johnson, et al v. GBI, et al* case number: 1:23–cv–04218–LMM (Dkt. 102, p. 13), See also Appendix "C", p. 61

5. Title 18 U.S. Code § 1018 prohibits[3] "a public officer or other person authorized by any law of the United States to make or give a certificate or other writing, knowingly makes and delivers as true such a certificate or writing, containing any statement which he knows to be false" shall be fined or imprisoned up to 1 year.

6. Title 18 U.S.C. § 1001 prohibits knowingly and willfully making false or fraudulent statements, or concealing information, in "any matter within the jurisdiction" of the federal government of the United States, even by mere denial. Whoever knowingly or willfully makes false or fraudulent statements in "any matter within the jurisdiction" of the federal government of the United States can be fined and imprisoned for up to 5 years.

7. The official record shows that Judge May violated a multitude of federal statutes, some criminal. She misrepresented the official record by inventing materially false claims in a feeble attempt to justify her unenforceable erroneous final order and is not protected from civil and criminal liability under the law.[4]

Included is a copy of the appeal brief and appendix for your convenience.

In advance, thank you for your time and attention to this matter.

Regards,

*/s/ Kenneth Johnson*
Kenneth Johnson

cc    U.S. Rep Mike Johnson
      U.S. Rep. Jim Jordan
      U.S. Rep. Hakeem Jeffries
      U.S. Rep. Jerry Nadler

---

[3] See 18 U.S. Code § 1018 - Official Certificates or Writings - https://www.law.cornell.edu/uscode/text/18/1018

[4] See *District of Columbia v Wesby*, 138 S. Ct. 577, 589, 199 LEd. 2d 453 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct 1092, 89 L.Ed. 2d 271 (1986)) - The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

# Exhibit 17

## Johnson et al v. May et al (1:26-cv-01212)

**Courts > Georgia Northern District Court**
**Filed:** Mar 03, 2026
**Judge:** Sarah E Geraghty
**Nature of Suit:** Civil Rights - Other Civil Rights
**Cause:** 42:1983 Civil Rights Act

**1**  cmp Complaint Thu 03/05 3:17 PM

COMPLAINT with Jury Demand filed by Kenneth Johnson, Jacquelyn Johnson. (Filing fee $405, receipt number 100025409) (pdt)

Att: 1    Exhibit 1,

Att: 2    Exhibit 2,

Att: 3    Exhibit 3,

Att: 4    Exhibit 4,

Att: 5    Exhibit 5,

Att: 6    Exhibit 6,

Att: 7    Exhibit 7,

Att: 8    Exhibit 8,

Att: 9    Exhibit 9,

Att: 10    Exhibit 10,

Att: 11    Exhibit 12,

Att: 12    Exhibit 13,

Att: 13    Exhibit 14,

Att: 14    Civil Cover Sheet

# Exhibit 18

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
### Northern District of Georgia

Case Number: 1:23-CV-04218-SEG

Plaintiff:
**Kenneth Johnson, et al**

vs.

Defendant:
**Georgia Bureau of Investigations, et al**

For:
Kenneth Johnson
Pro Se
2800 Tydnall Dr
Valdosta, GA 31602

Received by Ancillary Legal Corporation on the 6th day of August, 2025 at 9:35 am to be served on **Lowndes County School District c/o Sandra Wilcher - Superintendent, 1592 Norman Dr, Valdosta, GA 31601.**

I, Kathy King, being duly sworn, depose and say that on the 11th day of August, 2025 at 12:40 pm, I:

served Lowndes County School District c/o Sandra Wilcher - Superintendent by delivering a true copy of the **Second Amended Complaint, Exhibits** to: **Teri Weldon as Assistant to Superintendent/Authorized to Accept** for Lowndes County School District, at the address of: 1592 Norman Dr, Valdosta, GA 31601.

**Additional Information pertaining to this Service:**
8/11/2025  12:40 pm  Perfected corporate service at 1592 Norman Dr Valdosta, GA 31601. Teri Weldon, Assistant to Superintendent Sandra Wilcher, confirmed she was authorized to accept, and accepted service directly.

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

Subscribed and Sworn to before me on the 12th day of August, 2025 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
Kathy King

**Ancillary Legal Corporation**
2900 Chamblee Tucker Road
Building 13
Atlanta, GA 30341
(404) 459-8006

Our Job Serial Number: ANC-2025013319
Ref: Johnson

Copyright © 1992-2025 DreamBuilt Software, LLC. - Process Server's Toolbox V8.0o

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
#### Northern District of Georgia

Case Number: 1:23-CV-04218

Plaintiff:
**Kenneth Johnson and Jacquelyn Johnson**

vs.

Defendant:
**Georgia Bureau of Investigations, et al.**

For:
Kenneth Johnson
Pro Se
2800 Tydnall Dr
Valdosta, GA 31602

Received by Ancillary Legal Corporation on the 30th day of May, 2025 at 12:40 pm to be served on **Lowndes County, Georgia c/o Bill Slaughter - Chairman, 327 N. Ashley Street, 3rd Flr, Valdosta, GA 31601.**

I, Kathy King, being duly sworn, depose and say that on the 2nd day of June, 2025 at 1:06 pm, I:

served Lowndes County, Georgia c/o Bill Slaughter - Chairman by delivering a true copy of the Summons, Nature of the Action, Exhibits to: Peggy Moore as Authorized to Accept for Lowndes County, Georgia, at the address of: 327 N. Ashley Street, 3rd Flr, Valdosta, GA 31601.

**Additional Information pertaining to this Service:**
6/2/2025  1:06 pm  Perfected corporate service at 327 North Ashley Street 3rd Floor, Valdosta, GA 31601. Served Peggy Moore the Admin Clerk who stated she is authorized to accept as well.

**Description of Person Served:** Age: ~52, Sex: F, Race/Skin Color: White, Height: ~5'2", Weight: 155, Hair: Brown, Glasses: -

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true.I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

Subscribed and Sworn to before me on the 2nd
day of June , 2025  by the affiant
who is personally known to me.

NOTARY PUBLIC

Kathy King

**Ancillary Legal Corporation**
2900 Chamblee Tucker Road
Building 13
Atlanta, GA 30341
(404) 459-8006

Our Job Serial Number: ANC-2025009386
Ref: Johnson

Copyright © 1992-2025 Database Services, Inc. - Process Server's Toolbox V8.0b

ELTON GEORGE KING
COMMISSION EXPIRES
NOTARY
PUBLIC
APRIL 03, 2026
MITCHELL COUNTY, GEORGIA

# Exhibit 19

Case: 2013-4000101 User: gardinerj 5/2/2013

**EXAMINATION DATA FORM**

KENDRICK
JOHNSON,
17Y B M
DR. GAFFNEY-KRAFT

LOWNDES
COUNTY
2013-4000101
1/14/13

Name: Kendricks

Date & Time Body Arrived: 1/14/13/ 06:50

Transported by: Lukens Transport    Seal #

Weight: 160 lbs.    Height: 6'0 in.    DES: ACD    Photos by: RS

EXAM TYPE: (A)    LMTD.    EXT    ID    EXAM TIME: 0940 AM/PM

| | | | | | |
|---|---|---|---|---|---|
| BRAIN | 1280 g | R. PLEURAL | Ø cc/ml | APPENDIX: ⊕ | |
| HEART | 260 g | L. PLEURAL | Ø cc/ml | GALLBLADDER: ⊕ | |
| R LUNG | 260 g | PERICARDIAL | Ø cc/ml | UTERUS: +/- | |
| L LUNG | 240 g | PERITONEAL | Ø cc/ml | OVARIES: +/- | |
| LIVER | 860 g | URINE | Mod cc/ml | | |
| SPLEEN | 90 g | STOMACH | Minimal cc/ml | | |
| R KIDNEY | 90 g | BODY WALL FAT | in/cm | | |
| L KIDNEY | 100 g | | | | |

# OF X-RAYS: 1    # OF CASSETTES: 4    ORGANS KEPT: Y (N)

**Immediate Cause:** (Enter only one cause per line for A, B, C – to be completed by physician)

A. Positional Asphyxia

Due to or as a consequence of:

B.

Due to or as a consequence of:

C.

OSC: Conditions contributing to death but not related to cause given in Part I A. (if female, indicate if pregnant or birth occurred within 90 days of death).

Prescription drug related death [ ]    Illicit drug related death [ ]    Firearms related death [ ]

Part II:

NATURAL    (ACCIDENT)    SUICIDE    HOMICIDE    UNDETERMINED

HOW INJURY OCCURRED: Slipped and fell upside-down while reaching into the centralhole of a vertically-stored rolled-up GYM Mat and became trapped

On the basis of examination and/or investigation, in my opinion death occurred due to the cause(s) stated.

Signature: _____    Date Signed: 05/02/13

PENDING: (TOX) (HISTO) (MRS) (INV) ID    LAB REPORT    OTHER

ME FORM 52 REV3 08/18/11

PLAINTIFF'S EXHIBIT 2

