IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| KENNETH JOHNSON and JACQUELYN JOHSON, <br><br> Plaintiffs, <br><br> v. <br><br> CHIEF JUDGE LEIGH MARTIN MAY, in her official capacity; JUDGE SARAH ELISABETH GERAGTHY, in her official capacity; and THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, <br><br> Defendants. | Civil Action File No. 1:26-cv-01212-SDG |

**DEFENDANTS' MOTION TO DISMISS
AND BRIEF IN SUPPORT**

The Honorable Leigh Martin May, the Honorable Sarah E. Geraghty, and

the United States District Court for the Northern District of Georgia, by and

through the United States Attorney for the Northern District of Georgia, move to

dismiss all claims asserted against them and, in support, show as follows.[1]

---

[1] Although Plaintiffs' original complaint included the U.S. District Court for the Northern District of Georgia as a named defendant in the case caption (Doc. 1 at 1), neither the original nor the amended complaint lists the Court as one of the defendants in the "Parties" section (Doc. 1, ¶¶ 5-9; Doc. 8, ¶¶ 5-9), and the

## FACTUAL BACKGROUND

Plaintiffs' complaint arises from two federal lawsuits they filed in this Court: *Kenneth Johnson v. Georgia Bureau of Investigation*, No. 1:23-cv-04218-SEG ("First Lawsuit") and *Kenneth Johnson v. Georgia Department of Public Health*, No. 1:24-cv-05140-SEG ("Second Lawsuit") (collectively, the "Federal Lawsuits"). *See* Doc. 8, ¶ 8. Plaintiffs brought the lawsuits to pursue their claims of a conspiracy to cover -up the facts surrounding the death of their minor son, Kendrick Lamar Johnson (Doc. 8 at 2-3).

*The First Lawsuit*: The First Lawsuit was filed on September 19, 2023. *See* First Lawsuit, Doc. 1. After extensive motion practice, Judge May granted the motion to dismiss (Doc. 102), Plaintiffs appealed (Doc. 104), and the Eleventh Circuit affirmed the denial of Plaintiffs' motion to recuse, affirmed the dismissal of the claims, and remanded the case to allow Plaintiffs to file an amended complaint (Doc. 111). On remand, Judge May recused herself from the case, and it was reassigned to Judge Geraghty (Doc. 130). Plaintiffs filed their amended complaint, the defendants again moved to dismiss, and Judge Geraghty entered

amended complaint does not list the Court in the caption (Doc. 8 at 1). Nonetheless, this motion will address any potential claims against the Court in an abundance of caution.

an order granting the motion to dismiss (Doc. 218).  Plaintiffs have appealed the

order (Doc. 220) and the appeal is currently pending in the Eleventh Circuit.

*The Second Lawsuit*: The Second Lawsuit was filed on November 8, 2024.

*See* Second Lawsuit, Doc. 1.  The case was initially assigned to Judge May.  It was

then reassigned to The Honorable Tiffany R. Johnson and then to Judge Geraghty

(Doc. 15).  On July 16, 2025, Judge Geraghty entered an order granting the

defendants' motions to dismiss but allowed Plaintiffs to file an amended

complaint (Doc. 19).  Plaintiffs filed their amended complaint on July 25, 2025

(Doc. 20) and the defendants again moved to dismiss.  On March 9, 2026, Judge

Geraghty entered an order granting the motions to dismiss and denying

Plaintiffs' motion to recuse (Doc. 31).  Plaintiffs appealed the order on April 6,

2026 (Doc. 33).  The appeal is currently pending in the Eleventh Circuit.

*The instant lawsuit*:  On March 3, 2026, Plaintiffs filed the instant lawsuit,

naming Judge May, Judge Geraghty and the U.S. District Court for the Northern

District of Georgia as defendants.  Plaintiffs allege that Judge May and Judge

Geraghty (collectively, the "Federal Judiciary Defendants") entered "materially

false, fraudulent , and felonious Orders" while they presided over the Federal

Lawsuits. *See* Doc. 8, ¶¶ 8, 28.  In particular, Plaintiffs allege that they were

"required by law" to deny the motions to dismiss filed by the defendants in the

3

Federal Lawsuits. *See* Doc. 8 at 4.  Their failure to do so, according to Plaintiffs, constituted a violation of Plaintiffs' constitutional rights under the Fifth, Seventh and Fourteenth Amendments to the U.S. Constitution. *See* Doc. 8 at 1.

Although Plaintiffs also alleged fraud on the court and intentional infliction of emotional distress (Doc. 8 at 1), it does not appear that they intended to assert claims under Georgia tort law or the Federal Tort Claims Act.  To the contrary, Plaintiffs state that their action "is authorized and instituted pursuant to provisions under *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388 (1972)." *See* Doc. 8, ¶ 2.  Therefore, Defendants will treat their claims as *Bivens* claims brought against the Federal Judiciary Defendants in their individual capacities.[2]

The claims against the Federal Judiciary Defendants should be dismissed for the following reasons, as discussed more fully below:

1. The Federal Judiciary Defendants are protected by the doctrine of judicial immunity.

2. The Federal Judiciary Defendants are protected by the doctrine of qualified immunity.

---

[2] Although the Complaint also states that the Federal Judiciary Defendants are being sued in their official capacities (Doc. 8, ¶¶ 6, 7, 34, 35, 44, 45, 91, 96 and case caption), it seems clear that the intent was to bring *Bivens* claims against them in their individual capacities.  To the extent the Court disagrees, Defendants respectfully request the opportunity to address any official capacity claims.

3. Plaintiffs have failed to state a *Bivens* claim against the Federal Judiciary Defendants.

The claim(s) against the U.S. District Court for the Northern District of Georgia (the "Court") should be dismissed for failure to state a claim.

## ARGUMENT AND CITATION OF AUTHORITY

**1. The Federal Judiciary Defendants are protected by the doctrine of absolute immunity.**

Questions of immunity are matters of law for the court to decide as early in the proceeding as possible. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Indeed, the "driving force" behind the creation of the immunity doctrine is a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In other words, it is an immunity from suit, not just from an ultimate assessment of liability or damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). *See also Seigert v. Gilley*, 500 U.S. 226, 232 (1991) ("One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("[I]t is "an immunity from suit rather than a

mere defense to liability."). Thus, when considering the defenses of absolute or qualified immunity, a court must consider the implications of the defenses at the outset of the lawsuit.

It is a well-settled principle of law that judicial officers are immune from damages suits arising out of their official duties. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). The Supreme Court has held that judicial immunity can only be overcome in two sets of circumstances: (1) where the actions taken were nonjudicial, and (2) where the actions were taken in the "complete absence of all jurisdiction." *See Mireless v. Waco*, 502 U.S. 9, 11-12 (1991). Here, the specific orders challenged by Plaintiffs do not fall within either set of circumstances.

### A. The orders entered by the Federal Judiciary Defendants in the Federal Lawsuits were judicial in nature.

Whether an action is taken in a judge's judicial capacity turns on the nature of the act itself, *i.e.*, whether the act is a function normally performed by a judge, and whether the party was dealing with the judge in his judicial capacity. *See Mireless*, 502 U.S. at 12. *See also Stump*, 435 U.S. at 362 (holding that an act is "judicial" when it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity).

6

The alleged actions at issue here took place in the context of the Federal Judiciary Defendants' respective roles as the judges presiding over cases brought by Plaintiffs. As the presiding judges, they were responsible for ruling on motions filed by the parties in those cases, which is what they did when issuing the orders on the defendants' motions to dismiss. Plaintiffs had the opportunity to be heard on those motions before the Federal Judiciary Defendants ruled. Moreover, they had the right—and they exercised that right—to challenge the orders on appeal.

Plaintiffs were dealing with the Federal Judiciary Defendants in their judicial capacity. Their interactions with the Federal Judiciary Defendants arose in the context of cases in which they were named litigants and over which the Federal Judiciary Defendants were presiding in their respective capacities as a federal judges.

Plaintiffs do not allege any specific facts indicating that the Federal Judiciary Defendants acted with any improper motive when issuing the orders in the Federal Lawsuits. Even if they had, the Supreme Court has held that a judge will not be deprived of immunity even where his actions were taken with an improper motive. *See Stump*, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was

in excess of authority . . .").[3]  Thus, Plaintiffs cannot show that the Federal

Judiciary Defendants' actions were not judicial in nature.[4]

### B. Plaintiffs cannot show that the Federal Judiciary Defendants were acting in the "complete absence of all jurisdiction."

Plaintiffs also must show that the Federal Judiciary Defendants were acting

"in the complete absence of all jurisdiction." *Mireless*, 502 U.S. at 12.  This

standard is high:  the matter on which the judge acts must clearly be outside the

court's subject matter jurisdiction to vitiate immunity. *Id.* at 13 (holding that

although judge's alleged authorization and ratification of police officers' use of

excessive force to bring attorney to his courtroom was an action in excess of his

authority, it cannot be said to have been taken in the absence of jurisdiction);

*Dykes v. Hosemann*, 776 F.2d 942, 947–48 (11th Cir. 1985) (en banc) (holding that

judicial immunity can apply even if the court lacked personal jurisdiction over

the litigant as long as the court had subject matter jurisdiction to hear the case).[5]

---

[3] In *Stump*, the plaintiff brought a claims arising from a judge's order that she undergo involuntary sterilization.

[4] The Federal Judiciary Defendants deny any improper motive or bias.

[5] *Dykes* involved a custody dispute, in which the judge entered an order granting the father's petition to have his son declared a dependent child and award custody to him, even though the mother had never been served with a summons and copy of the petition.

Here, there is no dispute that the Federal Judiciary Defendants had subject matter jurisdiction over the specified cases. Their orders were issued in connection with their obligation to rule on the motions filed in the cases before them and to oversee the litigation brought before the court. Accordingly, Plaintiffs cannot show a clear absence of all jurisdiction.

Because Plaintiffs cannot show that the Federal Judiciary Defendants' alleged actions were nonjudicial nature or that they acted in the clear absence of all jurisdiction, they are entitled to absolute immunity from suit and Plaintiffs' claims against them should be dismissed on that basis.

## 2. The Federal Judiciary Defendants are protected by the doctrine of conditional immunity.

Even if the Federal Judiciary Defendants were not afforded absolute immunity, they would nevertheless be entitled to qualified immunity for their actions. Qualified immunity shields a defendant from liability for harms arising from discretionary acts, so long as these acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To be clearly established, the contours of an asserted constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates

that right." *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Supreme Court and the Eleventh Circuit have affirmed that a plaintiff cannot strip a government actor of his qualified immunity merely by citing to general rules or abstract rights. *See Anderson*, 483 U.S. at 639. Rather, the plaintiff must show that the rules apply with "obvious clarity" to the particular circumstances at issue in the case. *See Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) ("To demonstrate that the law at the time clearly established that Defendants' conduct would violate the Constitution, Plaintiffs might point to either (1) earlier case law from the Supreme Court, this Court, or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of Defendants' conduct.").

Here, Plaintiffs cannot show either. Therefore, even if judicial immunity did not apply, the Federal Judiciary Defendants would still be entitled to qualified immunity.

### 3. Plaintiffs fail to state a *Bivens* claim against the Federal Judiciary Defendants.

Unlike 42 U.S.C. § 1983, which statutorily provides for lawsuits against state officers for constitutional violations, "Congress did not create an analogous statute for federal officials." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). In *Bivens*, the Supreme Court "broke new ground" by holding that a person alleging an unlawful search and arrest could bring a Fourth Amendment damages claim against a federal official even though no federal statute authorized such a claim. *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020). The Supreme Court later extended *Bivens* on two occasions: first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *Davis v. Passman*, 442 U.S. 228 (1979); and second, for an Eighth Amendment claim on behalf of a federal prisoner who died from an alleged failure to provide adequate medical treatment for a severe asthma attack, *Carlson*, 446 U.S. at 14. These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Supreme Court has implied a damages remedy under the Constitution. *Ziglar*, 582 U.S. at 131.

In recent years, the Supreme Court has explained that the *Bivens* trilogy of cases were decided under an "*ancien regime*" when "the Court assumed it to be a proper judicial function to 'provide such remedies as are necessary to make

effective' a statute's purpose." *Zigler*, 582 U.S. at 131. In 2022, the Supreme Court issued its decision in *Egbert v. Boule*, in which it explained that it increasingly had come to appreciate the tension between judicially created causes of action and the separation of legislative and judicial power. *Egbert v. Boule*, 596 U.S. 482, 491 (2022). It explained that "if [the Supreme Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id.* at 502. Accordingly, it held that a *Bivens* remedy is "a disfavored judicial activity" and is unavailable "in all but the most unusual circumstances" because "[a]t bottom, creating a cause of action is a legislative endeavor." *Id.* at 486, 491.

Since *Egbert* was decided, the Eleventh Circuit has published two decisions on the availability of a *Bivens* remedy, both times holding that no *Bivens* remedy was available: *Robinson v. Sauls*, 102 F.4th 1337 (11th Cir. 2024), involving a Fourth Amendment claim, and *Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024), involving Fifth and Eighth Amendment medical deliberate indifference claims. In *Johnson*, the court described the *Bivens* remedy as being "on the judiciary's equivalent of an endangered species list . . . staring extinction in the face." *Id.* at 850.

In holding that no *Bivens* remedy was available, the *Johnson* court applied the Supreme Court's two-step analysis for determining whether a new *Bivens* claim

12

may be implied. *Johnson*, 119 F.4th at 851. First, the court asked whether the case presented a new *Bivens* context—that is, whether the case was "meaningfully different" from *Bivens*, *Davis*, and *Carlson*. *Id.* (citing *Robinson*, 102 F.4th at 1342 (quoting *Egbert*, 596 U.S. at 492)). "The question is not a superficial one; for a case to arise in a previously recognized *Bivens* context, it is not enough that the case involves the same constitutional right and 'mechanism of injury.'" *Id.* (quoting *Ziglar*, 582 U.S. at 138-39). The court identified numerous examples in which cases might meaningfully differ, including the rank of the officers, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem to be confronted, the risk of disruptive intrusion by the Judiciary into the functioning of other branches, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* (citing *Ziglar*, 582 U.S. at 139-40).

Second, the court explained that, if a claim arises in a new context, "the second step in the analysis will make 'a *Bivens* remedy . . . unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages to proceed.'" *Johnson*, 119 F.4th at 851 (quoting *Egbert*, 596 U.S. at 492). "Central to this special-factors analysis 'are separation-of-powers principles.'" *Id.* (quoting *Hernandez*,

13

589 U.S. at 102). The court explained that this analysis thus "should not be applied at a 'narrow level of generality,' and it 'does not invite federal courts to independently assess the costs and benefits of implying a cause of action.'" *Id.* (quoting *Egbert*, 596 U.S. at 496).

Turning to the first step here, Plaintiffs' claims against the Federal Judiciary Defendants present a new context as they are "meaningfully different" from the types of claims pursued in *Bivens*, *Passman*, and *Carlson*.  Plaintiffs have not alleged Fifth Amendment violations in the employment context (*Passmen*), Fourth Amendment violations in the search or arrest context (*Bivens*) or Fifth or Eighth Amendment violations in the medical indifference context (*Carlson*).

Plaintiffs' claims also fail the second step of the *Bivens* inquiry. Applying *Egbert*, the *Johnston* court identified "the existence of an alternative remedial structure" as a special factor by itself, explaining that, "'[i]f Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure' to address a plaintiff's allegations, there is no need for an additional *Bivens* remedy." *Id.* at 1014-15 (citing *Egbert*, 596 U.S. at 493). Here, Plaintiffs had the option (and exercised that option) of appealing any orders entered by the Federal Judiciary Defendants with which they disagreed. Moreover, Plaintiffs' challenge of judicial decisions implicates the type of separation of powers

14

concerns that militate in favor of leaving such a remedy to Congress. *See Wyatt v. Wilson*, No. 1:23-509, 2025 WL 539687, at *7 (M.D. Pa. Feb. 18, 2025) (finding special factors indicated that Congress was better equipped to establish a remedy in damages actions against federal judges), *aff'd as modified sub nom.*, *Wyatt v. Municipality of Commonwealth of Harrisburg*, No. 25-1372, 2025 WL 2452465 (3d Cir. Aug. 26, 2025); *Albert v. Gonzales*, Nos. 23-3322, 24-3496, 2024 WL 3874234, at *2 (9th Cir. 2024) (applying the second step of the *Egbert* analysis to conclude that "Congress is in a better position to assess the social costs of litigation that would potentially inhibit public officials from performing their duties and that the plaintiff had alternative ways to challenge the clerk of court's decision to change her admission status from active to inactive.").[6]  Accordingly, any *Bivens* claims against the Federal Judiciary Defendants must fail as well.

**4. Plaintiffs have failed to state a claim against the Court.**

To the extent that Plaintiffs intended to name the Court as a defendant to this lawsuit, they have failed to alleged any specific facts that would support a claim for relief.  The only reference to the Court is on page 4 of the Amended

---

[6] In *Albert*, the plaintiff alleged that the clerk for the Eastern District of California committed constitutional violations in applying the court's attorney discipline rules.

Complaint, which alleges that the Court (along with the Federal Judiciary Defendants) should have denied the defendants' motions to dismiss in the Federal Lawsuits. *See* Doc. 8 at 4. This allegation is insufficient to state a claim against the Court.

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a short and plain statement of their claim showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 678 (2007) (quoting *Twombly*, 550 U.S. at 570)). In analyzing a complaint, the court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Only a complaint that states a "plausible" claim for relief survives a motion to dismiss. *Id.*

Plaintiffs' bare allegation that the Court should have denied the defendants' motions to dismiss in the Federal Lawsuits is not sufficiently specific to state a claim. As a result, any claims asserted against the Court should be dismissed.

16

## CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court

to dismiss all claims asserted against them.


Respectfully submitted,

THEODORE S. HERTZBERG
   *United States Attorney*
   *600 U.S. Courthouse*
   *75 Ted Turner Drive SW*
   *Atlanta, GA 30303*
   *(404) 581-6000   fax (404) 581-6181*


/s/NEELI BEN-DAVID
   *Assistant United States Attorney*
   Georgia Bar No. 049788
   Neeli.ben-david@usdoj.gov

17

## <u>Certificate of Compliance</u>

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief

has been prepared using Book Antiqua, 13 point font.

May 8, 2026.

> /s/NEELI BEN-DAVID
> *Assistant United States Attorney*

## Certificate of Service

The United States Attorney's Office served this document today by electronically filing it using the ECF system, which will automatically send notice to counsel of record, and by sending a copy by first class mail with sufficient postage to:

> Kenneth Johnson
> Jacquelyn Johnson
> 2800 Tyndall Drive,
> Valdosta, Georgia 31602

May 8, 2026

/s/ NEELI BEN-DAVID
NEELI BEN-DAVID
*Assistant United States Attorney*

19